WELSHER, Plaintiff in error, v. STATE, Defendant in error.*

*June 3—July 6, 1965.*

* Motion for rehearing denied, without costs, on January 20, 1966.

For the plaintiff in error there was a brief by *Marvin Resnick,* attorney, and *James M. Shellow* and *Shellow & Shellow* of counsel, all of Milwaukee, and oral argument by *Mr. James M. Shellow* and *Mr. Resnick.*

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, *William A. Platz,* assistant attorney general, and *Hugh R. O'Connell,* district attorney of Milwaukee county.

FAIRCHILD, J. Welsher's counsel urge the following claims in seeking a new trial: (1) That the circuit court abused its discretion in permitting Welsher to be tried jointly with Lee; (2) that the circuit court applied an improper standard in ruling upon a motion for dismissal; (3) that the circuit court erroneously permitted certain impeachment of Lee, the codefendant, and this was prejudicial to Welsher; (4) that certain testimony of a deputy district attorney was improper and prejudicial.

The record is voluminous, and we shall state only such facts as will be necessary for a discussion of the four claims above mentioned.

On July 27, 1959, at about 11 a. m. two men held up employees of Grebe Bakery, Inc., at 5132 West Lincoln Avenue, West Allis. The men were heavily disguised, but an employee observed the license number of the car in which they left. The car and plates had each been stolen.

The two men were seen walking away from this car near 5128 West Rita Drive, a short distance south of Lincoln avenue. They walked rapidly toward a wooded area. Several boys saw them going through the woods. A lady saw them walking south on Fifty-first street, south of the woods. Two men saw them enter a Buick automobile and drive away.

Most of these witnesses testified that one of the men carried a blue zippered bag. Some referred to it as "airline" type, and employees of the bakery so described a bag into which the robbers put the money.

The two men on Fifty-first street said the Buick was white on top and blue or bluish on the bottom, was a 1956 or 1957 model, and had a bug screen covering the entire front. One of them thought it was a two-door Roadmaster. A day or two later they were shown a car in the yard behind Welsher's home. It did not have a bug screen on it. One could not say whether it was the same car. The other thought it was the same car, but had some doubt.

Mr. Welsher lived in St. Francis. The lady who lived next door described his car as a 1957 four-door Buick two-tone, with a cream or white top and a bluish-purple bottom. There was a large bug screen on the front for about one month before July 27th. She testified that she saw the car at the Welsher home early in the morning, but that it was not there at 9 or 11 or noon. She saw Welsher return in his car about 12:30 or 1 p. m. He left again, and came back about 4 p. m. At this time she saw him remove the bug screen.

The jury saw Welsher's car and by stipulation were permitted to consider it as evidence, and a small plate taken from it was introduced in evidence.

Several of the boys in the woods and one of the men south of the woods positively identified Lee as one of the two men. Two of the boys identified Welsher on direct examination, but on cross-examination said they were not positive. One was age thirteen, one fifteen. Another thirteen-year-old stated on direct examination he was "not too sure" about Welsher. Several of the boys had selected pictures of both men out of photographs shown them by the police.

Search of Lee's home produced a gun which employees at the bakery said was similar to the gun held by one of the robbers.

There was testimony indicating that Welsher and Lee were acquainted, and that Lee had been at Welsher's home at times.

1. *The joint trial.* Mr. Welsher's counsel point out: (1) The weight of the evidence against Lee was much greater than that against Welsher; (2) the finding of the gun on Lee's premises might have been improperly regarded by the jury as evidence against Welsher because the testimony was that the gun of that type was carried by Lee's companion; (3) Lee's original, but abandoned, claim of alibi was used to impeach Lee's testimony as to his amended alibi, and impeachment of Lee might have improperly influenced the jury against Welsher.

Welsher moved seasonably for a separate trial. It is argued that since the first two of the points above mentioned were apparent from the transcript of the preliminary examination, it was an abuse of discretion to deny the motion. It is further argued that after all three of the propositions above stated became apparent at the trial, the prejudicial impact on Welsher was so great that the court should, on its own motion, have declared a mistrial as to Welsher.

We find no abuse of discretion in denying the original motion. Welsher did not move for a mistrial. The question would be whether the jury would probably be influenced against Welsher by evidence relevant against Lee alone or by Lee's presence as a codefendant. We do not consider the probability sufficient to have compelled the circuit court to order a mistrial on its own motion nor for us to grant a new trial in the interest of justice now.

Most of the witnesses testified to their observation of the two men who robbed the bakery, walked through the woods, and drove away in a Buick similar to Welsher's. The fact

that a number of these witnesses did not testify that they recognized him as one of the men would not have made their testimony irrelevant in a separate trial of Welsher. The gun and the material used to impeach Lee were not of sufficient magnitude to constitute an "entire line of evidence relevant to the liability of only one defendant," but "treated as evidence against all defendants by the trier of fact simply because they are tried jointly." [5] Had a separate trial been had, the great bulk of the evidence may well have been the same.

The circuit court instructed the jury that it was their duty to judge the guilt or innocence of each defendant separately, and that they might find one guilty and the other innocent, or both guilty, or both innocent. The impropriety of convicting one because the evidence against the other was stronger, or of being influenced against one by proof that did not relate to him is obvious and was doubtless stressed by Welsher's separate trial counsel. We do not consider that the circumstances made it difficult for a conscientious jury to perform this aspect of its duty.

2. *The claim that the circuit court applied an improper standard in ruling upon Welsher's motion to dismiss.* Welsher made a motion to dismiss at the close of the defendants' case. Judge GORDON denied the motion and made these remarks:

"The court has no hesitancy in denying your motion. There are indeed inconsistencies in the testimony as to clothing. There is testimony that conflicts with the comment on the automobile. There are other factors in the defendant Welsher's favor, but there is by no means a sufficient case so the court can say, as a matter of law, the defendant is not guilty."

[5] *State v. Nutley* (1964), 24 Wis. (2d) 527, 543, 129 N. W. (2d) 155; *Cullen v. State* (1965), 26 Wis. (2d) 652, 133 N. W. (2d) 284, 286.

Welsher argues, principally from the use of the words "sufficient case," that the court was saying that defendant had a burden of proof which must be met before the court could hold as a matter of law that the defendant is not guilty. We do not so interpret the remarks.

Remarks by a court in this context are significant upon review only if they demonstrate that the court's ruling was grounded upon an improper rule or mistake of fact, prejudicial to the complaining party. They need not have the precision or completeness as a statement of the law which would be required in an instruction to the jury, for example.

An accurate statement of the rule for testing the sufficiency of the evidence on a motion to dismiss, as well as on appeal, is " 'whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendant's guilt beyond a reasonable doubt'. . . This test has been phrased as in civil cases in shorthand form, 'any credible evidence to sustain the verdict,' but this must be understood to mean in a criminal case credible evidence sufficient to convince a jury beyond a reasonable doubt." [6]

In discussing the application of this test to cases resting upon circumstantial evidence, this court cited an earlier formulation, with approval, as follows:

". . . *Kollock v. State* (1894), 88 Wis. 663, 60 N. W. 817, states the principles applicable to circumstantial evidence to be: 1. That each of the several circumstances upon which the conclusion of guilt necessarily depends must be proved beyond a reasonable doubt; and 2. they must not only point with moral certainty to the guilt of the defendant, but must exclude to a moral certainty every other reasonable hypothesis. The rule does not require the exclusion of all other possible hypotheses or even probabilities, but only reasonable hypotheses of innocence." [7]

---

[6] *State v. Stevens* (1965), 26 Wis. (2d) 451, 463, 132 N. W. (2d) 502; *State v. Schmear*, ante, p. 126, 135 N. W. (2d) 842.

[7] *State v. Johnson* (1960), 11 Wis. (2d) 130, 135, 104 N. W. (2d) 379.

Judge GORDON presumably had those tests in mind at all times, including his previous denial of a motion to dismiss at the close of the state's case, when he commented that a jury issue had been created. His instructions to the jury reflected the same tests in the context of the jury's function. At the time of sentencing Judge GORDON stated there was no question in his mind of the guilt of defendants.

Evidently Welsher's trial counsel, in arguing for dismissal, had called attention to variations among the statements of the witnesses, some in describing the clothing of the two men seen by them, and some in describing the car which the two men entered on Fifty-first street and the car seen at Welsher's home. We assume he had argued that because of these discrepancies there must be sufficient doubt so that the evidence did not fulfil the standard required for conviction. We interpret Judge GORDON's remarks as meaning that after considering the discrepancies pointed out by counsel (*i.e.,* the "case" at that time offered in support of dismissal) he could not say as a matter of law that the evidence would not support conviction. He did not purport to state the legal standard applied, and we find nothing to indicate he applied an erroneous one.

It should be noted, also, that while counsel argues that the circuit court applied an erroneous rule in deciding to submit the case to the jury, they state in the brief: "The plaintiff in error does not urge that this Court hold, as a matter of law, that the case ought not to have been submitted to the jury, . . ."

3. *Alleged improper impeachment of Lee.* Lee and Welsher each took the stand and denied participation in the robbery. Lee testified that he had been at a motorcycle shop at Sixteenth and Wells streets in downtown Milwaukee shortly after 11 o'clock on the morning of July 27th. Witnesses from the shop testified in corroboration and some of them placed the time as early as 11 :10. Welsher testified he was at home

that morning except for a trip downtown which included a twenty-minute visit with a friend and a stop at a store. He said he was home from 10 :45 or 11 a. m. until around 1 p. m. His wife and children testified along similar lines.

Lee was arrested the day after the robbery. On November 27, 1959, he filed a notice of alibi pursuant to sec. 955.07, Stats., stating that at the time the robbery was alleged to have been committed he was at his brother's residence at Franksville, Wisconsin. On May 17, 1960, the circuit court permitted Lee to file an amended notice of alibi stating he had been at the motorcycle shop. At the trial, the court permitted the prosecution to cross-examine Lee with respect to the inconsistent statement in the first notice of alibi. He explained that he had been at Franksville earlier that morning and was confused with respect to the time when he filed his first notice.

Counsel argues that although a statute such as sec. 955.07, requiring advance notice of alibi may not contravene a defendant's privilege against self-incrimination, such statute creates enough compulsion so that the use of such notice as evidence of a prior inconsistent statement does violate such privilege.

Although we doubt the validity of the argument, even if made on behalf of Lee, it is unnecessary to decide the question in this case. Even if we assume that the use of the original notice of alibi did violate Lee's privilege, Lee is not complaining, and Welsher has no standing to complain of a violation of Lee's privilege. Welsher's claim must be limited to the assertion that impeachment of Lee, proper or improper, probably influenced the jury, improperly, against Welsher, and we have already dealt with that point.

4. *Alleged improper testimony by deputy district attorney.* Lee and Welsher testified that when they were in the office of Deputy District Attorney DeBrozzo, several of the boys who

testified at the trial were present, but were unable positively to identify Lee and Welsher as the men.

The state called Mr. DeBrozzo (who did not participate in the trial) in rebuttal. He testified that these boys were positive as to Lee and two of them were "a little bit hazy about Welsher, but they were sure it was Welsher because he was the size, and they got a look at the side of his face."

Both Lee's and Welsher's trial counsel cross-examined DeBrozzo concerning his recollection that the boys had identified Lee and Welsher as the men in the woods. He answered several times that the boys were positive.

In the course of cross-examination, Welsher's counsel asked the following question and received the following answer:

"*Q*. You're a prosecutor, isn't that right? You don't ordinarily defend people in these courts, is that correct? *A*. I defend them in the office. I refuse to issue a warrant if I believe a man is innocent, and I refuse almost as many warrants as I issue; let's get that straight; because if I felt at the time either or both of these men were innocent, I would have refused to issue the warrant which I did."

No motion was made to have the answer stricken, nor to have the jury instructed to disregard the answer, nor for a mistrial.

Probably the question, although in two parts, could accurately and responsively have been answered "Yes." It bordered, however, on being argumentative and a double question and carried an implication calculated to be irritating. The answer, indicating Mr. DeBrozzo's belief in the guilt of defendants, added little if anything to several previous answers on cross-examination in which he stated that the identification had been positive and he had no doubt the boys were positive. Under all the circumstances we do not consider it was error for the court to deny the motion for new trial on the ground of this answer.

5. *The statement of facts.* Sec. (Rule) 251.44, Stats., permits the parties in a criminal case to stipulate to dispense with an appendix. This saves printing expense for a defendant appellant who pays his own expenses, and for the state if the defendant appellant is indigent. We must point out, however, that unless the statement of facts is prepared in sufficient detail to serve as a reasonably helpful summary of or guide to the transcript of testimony, our burden is very considerably increased. For example the present record has 1,939 pages, 1,500 of which constitute the transcript of the trial, yet the statement of facts is most meager in both briefs, and it has been necessary to assemble many of the facts summarized in this opinion directly from the record.

*By the Court.*—Judgment affirmed.

GORDON, J., took no part.