STATE, Respondent, v. GRESENS, Appellant.*

*No. State 56. Argued September 6, 1968.—Decided October 1, 1968.*
(Also reported in 161 N. W. 2d 245.)

[2] *Lock v. State* (1966), 31 Wis. 2d 110, 114, 115, 142 N. W. 2d 183.

* Motion for rehearing denied, without costs, on November 26, 1968.

For the appellant there was a brief and oral argument by *John E. Esler* of Kaukauna.

For the respondent the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, and *William A. Platz,* assistant attorney general.

HALLOWS, C. J. The defendant claims the trial court erred in not directing a verdict of not guilty. The motion was based upon the ground the state had failed to prove the unborn child was alive at the time the defendant acted. "Abortion" is defined in sec. 940.04 (1), Stats., as an intentional destruction of an unborn child by any person other than the mother. An unborn child is defined in sec. 940.04 (6) as a human being from the time of conception until it is born alive. Thus of the three elements of the crime which must be proved beyond a reasonable doubt, namely, a living unborn child, a destruction and the intent to destroy, only the proof of the first element is in dispute. The defendant readily admitted he intended to commit an abortion and performed acts for that purpose.

The test of the sufficiency of the evidence to sustain a motion for a directed verdict is the same as a motion to dismiss. Both are addressed to the legal proposition of whether the evidence taken most favorably against the accused is sufficient to support a finding of guilt beyond a reasonable doubt. *Welsher v. State* (1965),

28 Wis. 2d 160, 135 N. W. 2d 849; 23A C. J. S., *Criminal Law*, p. 361, sec. 1145 (3). We have pointed out that the test of beyond a reasonable doubt does not exclude every possible doubt but is that moral certainty which "is a reasonable certitude or conviction based on convincing reasons and excludes all doubts that a contrary or opposite conclusion can exist based on any reasons. One having such a state of mind is said to be convinced beyond a reasonable doubt." *State v. Johnson* (1960), 11 Wis. 2d 130, 135, 136, 104 N. W. 2d 379. *See also State v. Stevens* (1965), 26 Wis. 2d 451, 132 N. W. 2d 502.

Since this claim of error deals with the sufficiency of the evidence, this court reviewed the evidence to determine whether a jury could be convinced beyond a reasonable doubt that the unborn child was living at the time the defendant committed the act with intention to commit an abortion. For this purpose, the fact the jury did so find is unimportant.

About August 2, 1965, the defendant learned through a tavern owner that a Mrs. Rita Jungers wanted to terminate her pregnancy. The defendant telephoned Mrs. Jungers and offered her his services and made arrangements to come to her home to discuss the matter. The following day the defendant met Mrs. Jungers and her sister and stated to them he was not a doctor but a post-office worker. He explained the method of abortion he proposed to use and assured her there was no physical danger. The price of $450 was agreed upon. The following day the defendant returned to Mrs. Jungers' home and in the presence of her sister inserted a catheter or small rubber tube with a guide or wire in it into Mrs. Jungers' womb. After the catheter was inserted the wire was removed. He explained the unborn child would die because of the oxygen which would enter the womb and instructed her that when she began to bleed she was to reinsert the wire in the tube and keep the tube open by running the wire back and forth. The defendant received his money. Sometime thereafter Mrs. Jungers

began to bleed but during the night she become so un-comfortable that she removed the catheter. The next day according to Mrs. Jungers the defendant reinserted the catheter. Again that night Mrs. Jungers was ex-tremely uncomfortable and by morning was extremely sick. In the afternoon her sister telephoned Mrs. Jungers' family doctor who made arrangements for her to see a Dr. Giffin, a specialist in obstetrics and gynecology. Dr. Giffin examined Mrs. Jungers about suppertime in his office and admitted her to the hospital.

Because of Mrs. Jungers' serious condition, Dr. Giffin called in another obstetrician and gynecologist. On August 9th, 11th, and 16th, Gravindex tests for preg-nancy were taken and all proved positive. It was testi-fied that this test was a hormone test to determine pregnancy and Dr. E. H. Raney, a partner of Dr. Giffin, stated, "You could have a pregnancy test continue to be positive for a short time after there had been a fetal death." On August 16th Mrs. Jungers was dis-charged from the hospital. Dr. Giffin decided she was no longer pregnant but rather than performing surgery decided to await a natural emptying of the uterus. How-ever, on August 22d when this natural emptying started, she was readmitted to the hospital and a Gravindex test showed negative, thus indicating she was no longer clin-ically pregnant.

On August 24th Dr. Raney performed a curettage (scraping of the uterus) on Mrs. Jungers and the tissues extracted were sent to a pathologist for examination. This pathologist testified the tissues disclosed a macer-ated and degenerated embryo along with the placenta.

The defendant testified Mrs. Jungers assisted him in inserting the catheter the first time and had inserted it herself the second time after he had cleaned it. He also testified she seemed very nervous, flushed and feverish at the time he first saw her; that she had been taking drugs and felt dizzy. Mrs. Jungers testified that while she wanted her pregnancy terminated she did

nothing to cause it prior to seeing the defendant. On August 6th, the day she was admitted to the hospital, she complained of bleeding, mild cramps, abdominal pains and chills, and her temperature was 102 degrees. Dr. Giffin's report of his physical examination at the hospital indicates the uterus was "about 10 week size." Dr. Giffin at that time thought she was about 12 weeks pregnant based on her last menstrual period. On August 16th when he discharged her from the hospital he believed Mrs. Jungers was not carrying her pregnancy in spite of the result of the Gravindex test but was safe from her infection.

Dr. Raney testified that when he performed the curettage on August 24th the uterus was about a five-weeks' size or slightly larger than normal. The pathologist Dr. Meighan testified he was unable to state when the degenerating process of the embryo commenced "in relationship to the onset at pregnancy" and "I have no way of knowing how long it was dead." He further testified the embryo had reached a certain size which would make it somewhere beyond four-weeks' gestation. The pathologist referred to the unborn child as an embryo at that stage. Dr. Giffin testified a "planting" is designated an embryo for a period of eight weeks from the beginning date of the last flow; after that, it is termed a "fetus."

From this evidence it is argued a jury could not be convinced beyond a reasonable doubt the unborn child was living in the first week of August when the defendant inserted the catheter. On the defendant's theory, the unborn child had been dead some four to eight weeks when he acted. We think there was enough evidence for the jury to find beyond a reasonable doubt that the unborn child was then living. Certainly Mrs. Jungers thought it was; defendant thought it was; the tests, while not conclusive, indicated it was. The testimony of the pathologist is not very probative that the unborn child was dead on August 3d or 4th. The presumption

that life from conception continued was not rebutted by any convincing evidence and the other medical testimony supported the presumption of life. While there is some confusion in Mrs. Jungers' testimony of the date she commenced to bleed, the only fair interpretation of her testimony is that she did not bleed before she saw the defendant. The evidence need not exclude or negate every possibility because the mere possibility the unborn child might not have been living is not sufficient reason to prevent a jury from believing beyond a reasonable doubt the unborn child was living.

Many errors are claimed to have occurred during the trial. Most of the claims have little or no merit and none of them requires the granting of a new trial. The defendant complains of the form of the verdict because it contained the words "crime of abortion." The jury was instructed correctly on the crime of abortion and we find no error in using the word "abortion" in the verdict.

The court refused to instruct the jury that it had to be convinced the defendant's acts solely and independently of any other person caused the miscarriage and death of the embryo. While the defendant's acts must cause the destruction of an unborn child, they need not be the sole or an independent cause of such destruction. It is sufficient that the defendant's acts are a cause of the death of the unborn child. Under the defendant's contention, neither of two persons jointly causing the death or destruction of an unborn child would be guilty of abortion. In addition, under sec. 939.05 (2) (b), Stats., one who aids and abets the commission of a crime is a principal of the crime under sec. 939.05 (1). The defendant's contention is untenable.

There was no error in instructing on the presumption of life. This instruction is part of the Wisconsin Jury Instructions—Criminal, Part II, sec. 1125. It is based on 1 Wharton, *Criminal Evidence* (12th ed. 1955), sec. 115.

Likewise, we find no error in further instructing the jury by repeating the statutory definition of an unborn child as contained in sec. 940.04 (6), Stats. Nor was repeating this instruction in the voluntary absence of the defense counsel error. *See Behling v. Lohman* (1966), 30 Wis. 2d 519, 141 N. W. 2d 203.

Defendant claims at least five errors in rulings on evidence and two in limiting the defendant's cross-examination of witnesses who were granted immunity. We have examined the record and find no error in the rulings on evidence. We believe, however, it was error for the trial court to restrict the defendant's cross-examination of the witnesses who were granted immunity. The defendant has a right to bring out the motives of the state witnesses on cross-examination. 58 Am. Jur., *Witnesses*, p. 389, sec. 722; Annot. (1958), 62 A. L. R. 2d 610. The defense has a right to know the basis for the immunity; what other promises were made, if any; and whether the witness has been influenced or coached by the prosecution. *See State ex rel. Kowaleski v. Kubiak* (1950), 256 Wis. 518, 41 N. W. 2d 605; *O'Connor v. State* (1966), 31 Wis. 2d 684, 143 N. W. 2d 489. However, we do not consider on the facts presented and the issue involved the error to be prejudicial and require reversal.

We have examined all the other claims of error and believe them to be without merit.

*By the Court.*—Judgment affirmed.