STATE, Respondent, v. DUDA, Appellant.

*No. State 100.  Argued September 10, 1973.—Decided*
*October 2, 1973.*
(Also reported in 210 N. W. 2d 763.)

For the appellant there was a brief by *Leon S. Schmidt* and *Schmidt, Thibodeau & Schmidt,* all of Wisconsin Rapids, and oral argument by *Leon S. Schmidt, Jr.*

For the respondent there was a brief by *Robert W. Warren,* attorney general, and *Steven B. Wickland,* assistant attorney general, and oral argument by *James H. McDermott,* assistant attorney general.

CONNOR T. HANSEN, J.   There is little dispute as to the facts.  The defendant was working as a bartender at his father's nightclub.  About 11:45 p. m., on the evening of November 22, 1971, McLaughlin and Kay Anderson came into the nightclub and ordered drinks from the defendant.  McLaughlin was twenty years of age at the time, and the establishment was not licensed to serve alcoholic beverages to persons under twenty-one years of age.  The two girls remained on the premises until 1:10 a. m. and had several additional drinks.  The nightclub was required to close at 1 a. m.

Shortly after 1 a. m., two police officers entered the premises.  McLaughlin admitted she was twenty years of age.  She was arrested for loitering on the premises while under age, and released on a signature bond.  Defendant was arrested for allowing a minor to loiter on the premises and for selling liquor after hours.

McLaughlin was a student at the University in Stevens Point, where she also was employed as a resident assistant.  Shortly after her arrest, one "Ray" arranged for the two girls to meet at the home of Phil Kolodziej, who

was also a part-time bartender at the nightclub and had some type of employment at the University. The defendant was also present at this meeting. They discussed their appearance in court scheduled for the morning of November 23, 1971. Defendant suggested that McLaughlin say she was an employee of the nightclub, which would serve as a reason for her being there at the time of the arrest. The rest of the group rejected this story. Instead, the girls agreed to say they had gone to the establishment to meet a friend and that while Anderson had gone to the bar, McLaughlin went to the restroom, and when she returned they were preparing to leave when the police arrived.

The defendant and McLaughlin appeared in court on the morning of November 23, 1971, pled not guilty, and their trials were set for December 3, 1971. Apparently, McLaughlin was surprised her case was not disposed of on the morning of the 23d. It appears she had somehow expected to be able, without taking an oath, to tell this story about going to the restroom and that would be the end of her case.

After the court appearance, the defendant and McLaughlin met in the corridor. He again suggested the employee story and apparently now raised the possibility of supporting that story with a payroll check. They agreed to meet at 4 p. m. that afternoon. Prior to the 4 p. m. meeting, McLaughlin talked to a student counselor, who was also a lawyer, and told her of the defendant's suggestion. The district attorney was contacted, and she was advised to meet the defendant at the appointed place and time and accept the check. McLaughlin and the defendant met at 4 p. m. on the 23d. He gave her a check, which she accepted, in the amount of $6.60, dated November 22, 1971, and signed with his father's name. This was to represent pay for four hours' work. She asked the defendant what was expected of her and was told to tell the employee story. Also at the

defendant's suggestion, she, unsuccessfully, endeavored to cash the check at a nearby store.

After presenting the foregoing evidence, the state rested its case. The defendant moved to dismiss for the reason that the state had not established the intent required by the statute. The motion was denied and this appeal followed.

The issues on this appeal are: (1) Whether the trial court erred in refusing to grant the defendant's motion to dismiss for the reason that the state had failed to prove the intent required under sec. 946.61, Stats.; [1] (2) whether the complaint can be deemed amended, after verdict, pursuant to sec. 971.29 (2), so as to amend the charge of bribery of a witness to the charge of solicitation of perjury, in violation of secs. 939.30 and 946.31 (1) (a).

### Motion to dismiss.

We find no Wisconsin case law construing sec. 946.61 (1) (a), Stats. However, the offense of bribery of a witness is generally defined in language similar to that relating to bribery of an official:

". . . Under a statute providing that bribery may be committed by giving, offering, or promising a reward to a person on an agreement or understanding that his testimony as a witness shall be thereby influenced, *the gift, offer or promise must be based on an agreement or*

---

[1] Sec. 946.61, Stats., provides, in pertinent part:

"**Bribery of witnesses** (1) Whoever does any of the following may be fined not more than $10,000 or imprisoned not more than 5 years or both:

"(a) *With intent to induce* another to refrain from giving evidence or testifying in any civil or criminal matter before any court, judge, grand jury, magistrate, court commissioner, referee or administrative agency authorized by statute to determine issues of fact, *transfers* to him or on his behalf, *any property* or any pecuniary advantage; or" (Emphasis supplied.)

*understanding that the witness will be influenced,* and a failure to procure the agreement leaves the crime incomplete, and is no more than an attempt to commit the crime. . . ." (Emphasis supplied.) 67 C. J. S., *Obstructing Justice,* p. 56, sec. 9.

In *State v. Alfonsi* (1967), 33 Wis. 2d 469, 476, 147 N. W. 2d 550, this court construed sec. 946.10 (2), Stats. (Bribery of public officers and employes) as requiring specific criminal intent, although that section made no such express requirement. This court held:

". . . the element of scienter is the rule rather than the exception in our criminal jurisprudence. This is particularly true with respect to the crime of bribery, which by its very nature has traditionally required a corrupt motivation; . . .

" 'The gravamen of the crime of bribery lays in the despicable act of unlawfully and corruptly soliciting and accepting sums of money or things of value to influence an official's acts with respect to his official duty.' " (Citing *State v. Harwood* (1937), 26 Ohio Law Abstract 473, 474.)

In further discussing the necessity of *mens rea,* this court cited *State v. Foord* (1955), 142 Conn. 285, 293, 113 Atl. 2d 591, construing the Connecticut bribery statute which, in part prohibited:

" 'Any . . . member of the general assembly, who shall accept or receive . . . any . . . valuable thing, except the compensation provided by law, . . . for the purpose of influencing the conduct or behavior. . .' " *State v. Alfonsi, supra,* page 477.

The *Foord Case* holding was also cited:

" 'To find the defendants guilty, it was essential for the court to decide that the payment and acceptance of the money *were for the corrupt* purpose alleged in the information.' " (Emphasis supplied.) *State v. Alfonsi, supra,* page 477.

A North Carolina decision, *State v. Greer* (1953), 238 N. C. 325, 77 S. E. 2d 917, was also quoted by this court

in *Alfonsi*, when we considered the issue of the requisite intent for bribery:

"'Bribery may be defined generally as the voluntary offering, giving, receiving or soliciting of any sum of money, present or thing of value with the corrupt intent *to influence the recipient's action. . . .*'" (Emphasis supplied.) *State v. Alfonsi, supra,* page 478.

In *State v. Sawyer* (1954), 266 Wis. 494, 500, 63 N. W. 2d 749, certiorari denied, 348 U. S. 855, 75 Sup. Ct. 80, 99 L. Ed. 674, rehearing denied 348 U. S. 890, 75 Sup. Ct. 205, 99 L. Ed. 699, the defendant appealed his conviction under the then sec. 346.06, Stats. (Bribery of officers). That section provided, in part:

"'. . . Any person who shall corruptly give, offer, or promise to any . . . legislative . . . officer of . . . any . . . city . . . any gift or gratuity, or any money, . . . or any pecuniary . . . advantage . . . *with intent to influence* his vote . . . .'" (Emphasis supplied.) *State v. Sawyer, supra,* page 500.

The defendant argued that the evidence at trial was insufficient to prove that he had bribed a Milwaukee alderman. This court extensively considered the evidence and concluded that it was for the jury to determine whether the *purpose* of the $600 discount the defendant had given the alderman off the price of a new car was an act of friendship or in return for the services of the alderman. This court explained:

"The essence of the offense prohibited by this statute is the corrupt bargain. As the trial court correctly instructed the jury, *if payment is made to the officer for the purpose of influencing his conduct* in respect to matters which may come before him in his official capacity, it is immaterial to the guilt of the payor whether or not the official's conduct was actually influenced or whether the purpose of the bribe was fulfilled. . . ." (Emphasis supplied.) *State v. Sawyer, supra,* page 500.

The defendant in this case was convicted of bribery of a witness, contrary to sec. 946.61 (1) (a), Stats., because he gave McLaughlin a check for $6.60 "with intent to induce" her to refrain from giving testimony. However, the record clearly reveals that the defendant gave McLaughlin a check for $6.60 not "with intent to induce" her to refrain from testifying against him, but, rather in an attempt to manufacture evidence which would corroborate the story that she had agreed to tell that she was an employee at the nightclub.

". . . While intent is a state of mind, it is not to be determined apart from the actions of the person involved. The state of mind or intent may reasonably be ascertained from the acts and conduct of a defendant, and the inferences fairly deducible from the circumstances. . . ." *Jacobs v. State* (1971), 50 Wis. 2d 361, 365, 366, 184 N. W. 2d 113; *Strait v. State* (1969), 41 Wis. 2d 552, 164 N. W. 2d 505.

The amount of the check leads to but one conclusion. It was not given as a bribe, or inducement, but rather as corroboration of the evidence the defendant intended to produce relating to testimony about McLaughlin's pretended employment at the nightclub. It was in the amount of $6.60, representing payment for four hours' work as a waitress. It was predated November 22, 1971, the date she was in the nightclub, and signed by the defendant with his father's name. The defendant endeavored to get her to negotiate it immediately. At the trial in the instant case, in response to the question, "What the check would represent?" she replied, "I felt that it would symbolize me as an employee of Poor Henry's [the nightclub] and that I was being given this check as proof that I had been working there." The check was given for the despicable purpose of manufacturing proof to corroborate McLaughlin's anticipated perjured testimony that she was an employee.

Defense counsel's motion to dismiss at the close of the state's case was made pursuant to sec. 972.10 (4), Stats.

The test of the sufficiency of the evidence on a motion to dismiss in the trial court is the same as that on appeal. It is whether, considering the state's evidence in the most favorable light, the evidence adduced, believed and rationally considered, is sufficient to prove the defendant's guilt beyond a reasonable doubt. *State v. Gresens* (1968), 40 Wis. 2d 179, 181, 182, 161 N. W. 2d 245; *Welsher v. State* (1965), 28 Wis. 2d 160, 166, 135 N. W. 2d 849. Under this test, the evidence presented by the state was not sufficient to prove that the defendant intended to bribe McLaughlin when he gave her this check.

### Amending the charge.

The state argues that sec. 971.29 (2), Stats., cures the defect in the state's case. This section in part provides:

"(2) At the trial, the court may allow amendment of the complaint, indictment or information to conform to the proof where such amendment is not prejudicial to the defendant. After verdict the pleading shall be deemed amended to conform to the proof if no objection to the relevance of the evidence was timely raised upon the trial."

Sec. 957.16 (1), Stats. 1967, is the predecessor of sec. 971.29 (2) (Laws of 1969, ch. 255, sec. 63, effective July 1, 1970). However, there was no significant legislative change in the language regarding the amendment after verdict found in sub. (2).

Sec. 957.16, Stats. 1967, was entitled "Variances disregarded; amendment," where the new sec. 971.29 is entitled "Amending the charge." However, the judicial council explained:

"This section is a restatement of existing law except that it provides that prior to arraignment the district attorney may amend a complaint or information without leave of the court or notice to the other party. Since the

district attorney is in charge of the prosecution he should be permitted to amend his pleadings prior to the time that the defendant has been required to plead. [Bill 603–A]" 1970 Wisconsin Annotations, p. 2141.

We are of the opinion that the sentence regarding amendment after verdict was intended to deal with technical variances in the complaint such as names and dates. The case law in Wisconsin considering this section concerns such technical amendments. *State v. Lincoln* (1863), 17 Wis. 597 (*579), (variance in spelling surnames deemed amended); *Baker v. State* (1894), 88 Wis. 140, 59 N. W. 570 (variance as to ownership and amount of money deemed amended in complaint charging larceny where penalty not affected); *Golonbieski v. State* (1898), 101 Wis. 333, 77 N. W. 189 (variance in corporate name deemed amended); *Meehan v. State* (1903), 119 Wis. 621, 97 N. W. 173 (larceny of watch deemed amended to larceny of gold watch); *Hess v. State* (1921), 174 Wis. 96, 181 N. W. 725 (allowing amendment of information before trial not prejudicial where offense originally alleged to have been committed on August 24, 1918, but amended to August 31, 1918).

In *State v. Bednarski* (1957), 1 Wis. 2d 639, 85 N. W. 2d 396, this court considered the defendant's contention that his conviction, under sec. 343.44, Stats. 1953, prohibiting the willful tearing down of any fence standing upon the land "of another," was not supported by the evidence where the complaint charged that the land belonged to one John Schaefer but the proof indicated it belonged to the state. The court concluded:

"3. There was no fatal variance between accusation and proof even if we accept the view that the land belonged to the state instead of to the Schaefers. The precise ownership of the land was not material to the merits of the case, it not being contended that defendant was the owner or had any authority from the owner; and there is no showing that defendant was misled to his

prejudice by the reference in the complaint and warrant to ownership by Schaefer. It was therefore a case for application of sec. 957.16, Stats. 1955, authorizing amendment to conform to the proof in cases *where the variance is not material to the merits of the action,* and providing that after verdict the pleading shall be deemed so amended if no objection based on the variance was timely raised at the trial. Supporting the view that the variance was properly disregarded here are *Anderson v. State,* 221 Wis. 78, 85, 265 N. W. 210; *State v. Carroll,* 239 Wis. 625, 633, 2 N. W. (2d) 211; *State ex rel. Wenzlaff v. Burke,* 250 Wis. 525, 531, 27 N. W. (2d) 475." (Emphasis supplied.) *State v. Bednarski, supra,* pages 642, 643.

Furthermore, in this case it would be impossible for the defendant to raise any objection to such an amendment of the charge because the state advances the argument for the first time on this appeal. As we understand the argument of the state, such an amendment could be made as a matter of course. If the reasoning of the state is viable, then the defendant would have no right to object to such an amendment until after the respondent's brief raising the issue is filed on appeal. Such is not the law.

41 Am. Jur. 2d, *Indictments And Informations,* p. 1072, sec. 310:

"Sec. 310. **Aider or cure by verdict.**
"It is well settled that a verdict will not cure a failure to allege a criminal offense or the omission of any essential allegation; any such objection is fatal after as well as before the verdict. It is equally well settled, however, that defects which are merely matters of form and not of substance, or ambiguities, etc., in an indictment or information, are cured by verdict; objections to such a defect, if made after verdict, come too late, regardless of the fact that they might have rendered the indictment bad had they been seasonably taken. Failure to allege that which the law presumes, may be cured by verdict."

41 Am. Jur. 2d, *Indictments And Informations,*
p. 1073, sec. 312:

"**Sec. 312. Different offense from that charged.**
"It is the general rule that a person cannot be convicted
of an entirely different offense from that charged or
necessarily included within the terms of the indictment
or information. To test the question whether an indict-
ment for one offense includes another, it has been said
that where the offenses are of the same general charac-
ter, the indictment for the one offense must contain all
the essential elements of the other; otherwise, the prose-
cution for the latter cannot be maintained. Even then,
it has been held that by alleging matters wholly imma-
terial to the description of the crime charged, the state
cannot compel the defendant to come to trial prepared to
contest any issue which the state is not bound to prove
in order to convict him of the offense charged."

In *Cole v. Arkansas* (1948), 333 U. S. 196, 201, 68
Sup. Ct. 514, 92 L. Ed. 644, the United States Supreme
Court held that:

". . . It is as much a violation of due process to send
an accused to prison following conviction of a charge on
which he was never tried as it would be to convict him
upon a charge that was never made. . . ."

The Arkansas Supreme Court, on appeal, found that the
defendant was guilty of violating sec. 1 of Act 193 of the
1943 Arkansas legislature although he had been tried
and convicted under sec. 2 of the same act. In reversing,
the supreme court held:

"No principle of procedural due process is more clearly
established than that notice of the specific charge, and
a chance to be heard in a trial of the issues raised by
that charge, if desired, are among the constitutional
rights of every accused in a criminal proceeding in all
courts, state or federal." *Cole v. Arkansas, supra,* page
201.

It does not follow from our reversal in this case that the defendant could not now be appropriately charged with any other alleged offense arising out of this incident.

*By the Court.*—Judgment reversed.