STATE of Wisconsin, Plaintiff-Appellant,

v.

Gerald E. TURLEY, Defendant-Respondent.

Supreme Court

*No. 83–2430–CR. Argued February 27, 1985 and November 26, 1985.—Decided February 11, 1986.*

(Also reported in 381 N.W.2d 309.)

39

For the plaintiff-appellant the cause was argued by *Sally L. Wellman,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the defendant-respondent there were briefs by *James A. Walrath, Michael J. Cohn* and *Shellow, Shellow & Glynn, S.C.,* Milwaukee, and oral argument by *Mr. Walrath.*

WILLIAM A. BABLITCH, J. The State of Wisconsin (State) asks this court to allow it to appeal a circuit court's dismissal of a criminal information against Gerald E. Turley (Turley), arguing that the court based the dismissal on an erroneous standard of review. Because we conclude that the dismissal constituted an ac-

quittal on the underlying charge, we hold that the double jeopardy provisions of the federal and state constitutions bar the appeal. Accordingly, we dismiss the State's appeal.

In October, 1983, the State presented evidence to a jury that Turley, a corrections officer for Waukesha county, had abused an inmate at the county jail, in violation of sec. 940.29, Stats. Central to the State's case was the testimony of three prosecution witnesses to an alleged struggle between Turley and the inmate. These three witnesses disagreed how the struggle occurred. Two of the witnesses were county corrections officers, both of whom had been Turley's co-workers at the jail for a period of months prior to the events from which this prosecution arises. One of these witnesses testified that his observation of Turley's handling of the inmate was obstructed. He stated that the inmate may have struggled with Turley but that in his opinion Turley did not use approved techniques to cope with the situation. The second officer testified that the inmate made a quick move, which could have been a punch at Turley, and that she saw the inmate's hands near Turley's neck in what could have been a choke. The third witness, a city police officer, testified that Turley threw the inmate against a wall in a holding cell, shoved him, struck him three times with his fist, kneed him and slammed him against the cell floor. That officer also stated that he had been in the holding cell with Turley and the inmate during most of the alleged incident and that the inmate had his hands at his sides at all times. In addition to these three witnesses, a doctor who treated the inmate following the incident also testified and there was deposition testimony by the inmate. Turley testified in his defense.

Following the presentation of all the evidence, the jury began its deliberations. Three hours later it asked for a reading of the testimony of the two corrections officers and of Turley. The court directed the jury to continue deliberations without hearing the transcribed testimony. Later that evening the jury foreman reported that the jury was hung. Before sequestering the jury for the night, the court urged it to make a sincere effort to arrive at a verdict and encouraged it to resume deliberations the next morning.

On the next morning the court directed a reading of the testimony of the corrections officers. That afternoon, after further deliberations, the foreman again reported that the jury was deadlocked. Both the State and Turley asked the court to allow the jury to continue deliberating. The court, however, dismissed the jury and declared a mistrial.

On October 24, Turley submitted a motion for a judgment of acquittal and for an order dismissing the information against him with prejudice. On November 7, the court heard the motion. At the hearing the State moved for a retrial. Observing that the State's main witnesses were experienced law enforcement offices and that they disagreed on the incident and concluding that the same dispute among the State's witnesses would occur at a retrial, the court dismissed the information.

The State filed a notice of appeal to the court of appeals, which certified the case to this court. We granted the certification and later remanded the case to the circuit court for a ruling on Turley's motion for a judgment of acquittal and for reconsideration and clarification of the order dismissing the information.

The court held a hearing on these matters on April 10, 1985.

At the hearing the State argued against the granting of a judgment of acquittal, on grounds that it had presented legally sufficient evidence on the charge against Turley, notwithstanding some inconsistencies in the testimony of the police officer and two corrections officers. It attributed those inconsistencies to differences in vantage points, the possibility of prejudice by co-workers and a lack of contrivance among witnesses. The court denied the defense motion for acquittal, stating:

". . . first of all on the motion for acquittal. I think acquittal or guilt are matters for jurors to decide after they consider the evidence. I don't think a Court's in a position because there are other remedies available to a Court, other motions, that a Court should be in a position to either acquit or find a person guilty; and therefore, the motion for acquittal is denied."

The State also asked that the court's declaration of mistrial be affirmed or, alternatively, be reconsidered. The court denied the motion for reconsideration. In its order it stated: ". . . this court denied reconsideration of its declaration of a mistrial for the reason that the jury had ample time to reach a verdict, was unable to do so, and the jury foreman indicated that the jury was hopelessly deadlocked."

Finally, the State moved for a reversal of the court's dismissal of the information, again arguing that the evidence it had adduced at trial was legally sufficient to support a jury verdict of guilty. The court, however, affirmed the dismissal. It stated:

"So really the final matter comes on as to whether or not the case should be dismissed. Now, the State has

a burden of proof beyond a reasonable doubt that the defendant it (sic) guilty as charged. The State presented four witnesses—as I recall three of whom were trained police officers—all of whom were in a rather close position to observe what happened, and all of whom disagreed on what happened. I view this, frankly, as more than inconsistencies; I view that as testimony coming from police officers and other witnesses as their version of what happened. When you have three or four different versions as to what happened over a five or six minute time period by officers who ought to be trained to observe, I think the State meets an impossible burden, the jury has an impossible situation.

"They can't say, well, let's discount the testimony of Officer Frea and decide the testimony of Officer so-and-so or discount the testimony of Officer so-and-so and decide upon Officer Frea. They have to view all the testimony, all the witnesses are credible. None of them were prejudiced that I can recall. As was brought out in the testimony, they are all reasonable witnesses.

"There can't be a clear version of what happened in that cell or in that holding room that night that would substantiate or justify any jury finding that this case was proved beyond a reasonable doubt. Therefore, the Court will grant the motion to dismiss."

During a subsequent discussion of proposed findings in support of its order, the court again addressed the question of the dismissal. This time it phrased its reasoning as follows:

"Well, the Court is of the opinion that any jury listening to the testimony that was presented at the trial would have to guess at which testimony was correct and which wasn't and that the testimony is so

44

conflicting—It's all credible, but there's no way that the State could establish the burden of proof. The jury may not conjecture. The jury may decide that one witness' testimony is incredible, I believe, but in this case all of the witnesses' testimony was credible, but it was so at odds that the testimony of one witness was so at odds with the other that the Court has to find that the State could not carry the burden of proof."

The order which the court issued after its hearing on remand summarized its findings of fact and conclusions of law. In relevant part, the findings of fact stated:

"2.    At the April 10, 1985 hearing, this court denied defendant's motion for judgment of acquittal on the ground that the credibility of witnesses is a matter for determination by the jury.

".  .  .

"4.  .  .  . this court reviewed and reconsidered the circumstances under which this Court ordered a dismissal of the criminal charge. This Court reaffirms its earlier order of dismissal based upon the findings set forth herein.

"5.    The prosecution has represented that if this matter were to be re-tried, the evidence would be substantially the same as that evidence presented at the first trial.

"6.    This Court finds that the testimony of the state's witnesses, although credible, is so inconsistent that the state would not be able to carry its burden of proof beyond a reasonable doubt at a subsequent trial."

Our review is limited to one issue: Is appeal from the circuit court's dismissal of the criminal information against Turley barred by the double jeopardy provisions of the federal and state constitutions?

45

On the issue before this court, the State argues that appeal of the dismissal would not violate Turley's constitutional right to avoid double jeopardy. It contends that a dismissal based on an erroneous standard of review does not have the same effect as a judgment of acquittal, which, it concedes, bars an appeal by the State from a jury verdict of acquittal or from a judgment of acquittal by the court following a bench trial.

Turley counters that the record of the court's hearing on remand establishes that its dismissal of the information was tantamount to an acquittal. According to Turley, the circuit court's characterization of its ruling as a dismissal, rather than an acquittal, does not determine whether the ruling was the equivalent of an acquittal. He further argues that the circuit court intended its action to be the equivalent of an acquittal. He argues that the question of whether the dismissal was the equivalent of an acquittal must be resolved by this court, which must determine whether the dismissal constitutes a fact-based judgment, and is therefore an acquittal, or whether it represents a legal judgment.

Turley contends that the record demonstrates that the court evaluated the factual evidence which the State presented and that it ruled on the basis of the sufficiency of that evidence to support a conviction on the underlying offense. In his view, whether the court erred in reviewing the nature of the evidence or weighing the credibility of witnesses is irrelevant. In support of this position, he cites *United States v. Martin Linen Supply Co.*, 430 U.S. 564 (1977) and subsequent cases which define an acquittal as a resolution by the court of some of the factual elements of the offense charged

in the defendant's favor, whether or not the court erred as a matter of law in the resolution.

To resolve the question before it, this court must interpret the double jeopardy provisions of the federal and state constitutions. An appellate court must decide questions of law independently without deference to the decision of the trial court. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W. 2d 389 (1984).

The double jeopardy clause of the fifth amendment to the federal constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Similarly, the state constitution provides, in relevant part, that "no person for the same offense shall be put twice in jeopardy of punishment. . . ." Wis. Const., art. 1, sec. 8. Since 1969 the double jeopardy clause of the fifth amendment has been applicable to the states through the due process clause of the fourteenth amendment. *Benton v. Maryland,* 395 U.S. 784, 794 (1969). In addition, because this court has concluded that the double jeopardy provisions of both constitutions are identical in scope and purpose, we have accepted decisions of the United States Supreme Court, where applicable, as controlling. *Day v. State,* 76 Wis. 2d 588, 591, 251 N.W. 2d 811 (1977). *See also State v. Mazur,* 101 Wis. 2d 306, 304 N.W. 2d 180 (Ct. App. 1981).

In 1977, reviewing the actions of a trial court which granted judgments of acquittal under Fed. Rule Crim. Proc. 29(c) after it discharged a deadlocked jury, the Supreme Court held that the double jeopardy clause barred appellate review and retrial in the cir-

47

cumstances presented. *Martin Linen* at 576. The Court stated, "[p]erhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that '[a] verdict of acquittal . . . could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution.' " (Citation omitted.) *Martin Linen* at 571. It reiterated a rule developed in earlier cases which states that the form of the trial court's action does not control whether it constitutes an acquittal. It stated that the appellate court ". . . must determine whether the ruling of the judge, *whatever its label,* actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." (Emphasis added.) *Id.* at 571. Accordingly, the Court concluded that the judgments on review were acquittals in substance because the trial court based the rulings on its evaluation of the government's evidence and its determination that the evidence was legally insufficient to sustain a conviction. *Id.* at 572.

Similarly, in *Sanabria v. United States,* 437 U.S. 54 (1978), the Court reviewed an acquittal ordered at the end of the government's case in a federal gambling prosecution. It held that the double jeopardy clause barred retrial of a defendant after the trial court erroneously excluded evidence against the defendant and then granted an acquittal based on the resulting insufficiency of the evidence. *Id.* at 68–69. The Court observed that it was without constitutional significance that the trial court had entered a judgment of acquittal rather than directing the jury to bring in a verdict of acquittal or giving it erroneous instructions that resulted in an acquittal. *Id.* at 64 n. 18.

More recently, the Court has reaffirmed the rule that reliance on errors of law does not change the double jeopardy effects of a judgment which amounts to an acquittal on the merits. In 1984 the Court held that double jeopardy prevented a state from resentencing a defendant to death following conviction on a murder charge, after a judge had erroneously sentenced the defendant to life imprisonment. *Arizona v. Rumsey,* 467 U.S. 203, 104 S. Ct. 2305, 2311 (1984). In *Rumsey* a life sentence had been imposed in a bench trial following a trial to determine guilt. Under Arizona law at this proceeding the trial court must make findings on mitigating and aggravating circumstances which, in turn, govern the sentence. *Id.* at 2306. The Arizona Supreme Court had held that the sentencing court erred in its findings and therefore had remanded the case for resentencing. *Id.* Reversing that holding, the Supreme Court stressed that the sentencing court's misconstruction of statutes which governed its findings did not change the double jeopardy effect of the sentence impossed, which amounted to an acquittal of the defendant on the merits of imposing the death penalty and which barred a retrial on its appropriateness. *Id.* at 2310. *See also: Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 104 S. Ct. 1805, 1814 (1984); *United States v. Sisson,* 399 U.S. 267, 279 n.7 (1970); and *Fong Foo v. United States,* 369 U.S. 141, 143 (1962).

From our review of these cases, it is clear that federal constitutional law treats mislabeled or erroneous rulings as acquittals when those rulings resolve factual elements of the offense and that these *de facto* acquittals bar appeal by the state when new trials would be necessitated. It is further clear that even if the circuit

court based its ruling on an erroneous standard of review, as the State argues in this case, double jeopardy precludes an appeal by the state if the ruling of the court resolved factual elements of the offense in Turley's favor. Accordingly, we now analyze the record in this case to determine whether the trial court's dismissal with prejudice of the information against Turley represented a resolution of factual elements of the offense. If so, we must conclude that appeal by the State is precluded on double jeopardy grounds.

At the hearing on remand the trial court twice discussed its reasons for affirming its original dismissal of the information against Turley.

First, in affirming the dismissal, the circuit court stated unequivocally: "There can't be a clear version of what happened in that cell or in that holding room that night that would substantiate or justify any jury finding that this case was proved beyond a reasonable doubt." Then later, during a discussion of proposed findings in support of its order, the court again unequivocally stated: ". . . there's no way that the State could establish the burden of proof. . . . in this case all of the witnesses' testimony was credible . . . the court has to find that the State could not carry the burden of proof." Again in its order, findings of fact and conclusions of law, the court repeated its rationale: "This Court finds that the testimony of the state's witnesses, although credible, is so inconsistent that the state would not be able to carry its burden of proof beyond a reasonable doubt at a subsequent trial."

■

In *Martin Linen* the Supreme Court concluded that the rulings of the trial court, notwithstanding the label given them by the trial court, were acquittals be-

cause the trial court based the rulings on its evaluation of the government's evidence and its determination that the evidence was legally insufficient to sustain a conviction. Likewise, here the trial court evaluated the evidence and determined that the evidence was legally insufficient to sustain a conviction. It stated unequivocally, not once, but three times, that the evidence presented by the State was insufficient to prove the defendant's guilt beyond a reasonable doubt. Regardless whether the court based this ruling on an erroneous standard of review or mislabeled the ruling, the words of the court recited in the three instances above clearly indicate a fact-based judgment of acquittal on the merits: the State's evidence was insufficient to meet its burden.

Accordingly, we hold that the double jeopardy provisions of the federal and state constitutions bar the State's appeal of the circuit court's dismissal of the criminal information against Turley in this case. We dismiss the State's appeal.

*By the Court.*—The appeal of the State is dismissed.

STEINMETZ, J. *(dissenting).* I disagree that the trial court's dismissal constituted an acquittal of the underlying charge. I therefore would reverse the trial court and remand for a new trial.

Turley moved for a judgment of acquittal and for an order dismissing the information against him with prejudice. The court did not grant an acquittal but dismissed the information. The trial court observed that the "State's main witnesses were experienced law enforcement offices [officers] and that they disagreed on the incident and that some dispute would occur at re-

trial." Agreement between eyewitnesses to an event is not always present and such agreement is not necessary for the evidence to be sufficient to support a conviction.

We gave the trial court another opportunity to acquit if that was his intent by remanding the case for a ruling on Turley's motion for judgment of acquittal and for reconsideration and clarification of the order dismissing the information. For the second time, the trial court denied the defense motion for acquittal. The trial court commented:

"So really the final matter comes on as to whether or not the case should be dismissed. Now, the State has a burden of proof beyond a reasonable doubt that the defendant it (sic) guilty as charged. The State presented four witnesses—as I recall three of whom were trained police officers—all of whom were in a rather close position to observe what happened, and all of whom disagreed on what happened. I view this, frankly, as more than inconsistencies; I view that as testimony coming from police officers and other witnesses as their version of what happened. When you have three or four different versions as to what happened over a five or six minute time period by officers who ought to be trained to observe, I think the State meets an impossible burden, the jury has an impossible situation.

"They can't say, well, let's discount the testimony of officer Frea and decide the testimony of Officer so-and-so or discount the testimony of Officer so-and-so and decide upon Officer Frea. They have to view all the testimony, all the witnesses are credible. None of them were prejudiced that I can recall. As was brought out in the testimony, they are all reasonable witnesses.

"There can't be a clear version of what happened in that cell or in that holding room that night that would substantiate or justify any jury finding that this case was proved beyond a reasonable doubt. Therefore, the Court will grant the motion to dismiss."

The statement in the first paragraph on which the majority relies is incomprehensible. The trial judge stated: "I think the State meets an impossible burden, the jury has an impossible situation." The second phrase states what juries are charged to do and that is to resolve an "impossible situation" when conflicts in observances and testimony are before them. The jurors do this by determining credibility and weight of testimony and applying burdens of proof as instructed by the court and either find guilt or acquit. The jury may not agree with the judge's conclusion that all of the state's witnesses were credible.

In the second paragraph, the trial court made a determination reserved for the jury. It found that the testimony of "all the witnesses are credible." The trial judge may find testimony incredible as a matter of law, but otherwise the credibility and weight to be given to each witness's testimony is exclusively for the jury. The judge made no reference in his dismissal to the respective weight assessment to be given each witness's testimony, but rather, only discussed credibility.

The third paragraph states that "There can't be a clear version of what happened in that cell or in that holding room that night that would substantiate or justify any jury finding that this case was proved beyond a reasonable doubt. Therefore, the Court will grant the motion to dismiss." It is not necessary that there be a "clear version" of events to uphold the burden of proof. Rather, the jury must determine what took place after

applying the instructions of credibility and weight of evidence and after applying burdens of proof.

During a subsequent discussion of proposed findings in support of his order, the judge again discussed the question of dismissal. The judge stated: "[I]n this case all of the witnesses' testimony was credible, but it was so at odds that the testimony of one witness was so at odds with the other that the Court has to find that the State could not carry the burden of proof." He did not determine the facts proved by the evidence, but made a determination of law.

Conflict in the testimony is for the jury to resolve by applying the instructions received. The trial court did not resolve the facts or conflicts of testimony but as a matter of law stated they could not be resolved by the jury to arrive at a guilty verdict. Therefore, the judge created a conflict by stating the testimony was all credible for the jury to accept but as a matter of law the jury could not determine weight or apply the appropriate burden of proof to resolve the conflict. The court could find some or all of the testimony incredible and acquit, but it could not find the evidence credible and take the weight determination from the jury. To do this was an error of law.

In his order the judge stated he would not acquit but would dismiss. This was a legal judgment by the trial court because the judge did not base his judgment on fact. The judge could not determine the facts by his own statement because all of the state's testimony was credible and he could not choose between the various witnesses' versions. The trial court did not determine facts but in effect found he could not determine facts due to total credibility of witnesses from his consideration of the evidence. The problem is the judge did not

apply the instructions, regarding weight of testimony and burden of proof, that the jury would have been required to consider. He did not pick one witness over another or others which would have resolved facts. He said he could not do that. Therefore, contrary to the majority's holding, *United States v. Martin Linen Supply Co.*, 430 U.S. 564 (1977), does not control the instant case to require a finding of acquittal. The ruling of the trial judge did not represent "a resolution, correct or not, of some or all of the factual elements of the offense charged." *Id.* at 571. The trial court never found the evidence was "legally insufficient to sustain a conviction." *Id.* at 572. This trial judge actually found there was too much evidence for the jury because the state presented evidence both for and against its position of legal guilt and it was "all credible." No ruling of this trial judge resolved factual elements of the offense in favor of Turley as claimed by the majority at 49–50.

In *Martin Linen* the trial court determined that the evidence was legally insufficient to sustain a conviction. Under those circumstances, trial judges are required to acquit. However, the trial judge in the case under consideration never made such a determination. This trial judge never found the evidence was legally *insufficient* to sustain a conviction but only that he could not determine which facts to accept.

This was not a fact-based judgment of acquittal on the merits as covered by *Martin Linen.* The trial judge made that clear when on three opportunities to acquit he refused to do so and held each time there was too much evidence from which the jury could choose, all of which was credible, so that when he stated the evidence was insufficient, that statement was incorrect and inconsistent with his constant findings of credible

but contrasting evidence. He could not find the evidence insufficient as he stated but rather due to his total analysis, it was conflicting. There is no explanation by him of the use of the term insufficient and its use was inconsistent with all of his other comments. His entire and repeated explanation is the evidence was all credible but conflicting.

The motion to acquit is in all respects the same as the motion for a directed verdict or a motion to dismiss. All of the motions are directed to the legal proposition of whether the evidence taken most favorably against the accused is sufficient to support a finding of guilt beyond a reasonable doubt. *State v. Gresens,* 40 Wis. 2d 179, 181, 161 N.W. 2d 245 (1968), discussed the identical nature of the test for a motion for a directed verdict and motion to dismiss.

In *Gresens,* at 182, in further explanation, the court wrote:

"We have pointed out that the test of beyond a reasonable doubt does not exclude every possible doubt but is that moral certainty which 'is a reasonable certitude or conviction based on convincing reasons and excludes all doubts that a contrary or opposite conclusion can exist based on any reasons. One having such a state of mind is said to be convinced beyond a reasonable doubt.' *State v. Johnson* (1960), 11 Wis. 2d 130, 135, 136, 104 N.W. 2d 379. *See also State v. Stevens* (1965), 26 Wis. 2d 451, 132 N.W. 2d 502."

In a jury case, the judge may not apply his own judgment as to the evidence but rather the judgment of reasonable jurors rationally considering the evidence.

In *State v. Duda,* 60 Wis. 2d 431, 439, 210 N.W. 2d 763 (1973), we stated:

56

"The test of the sufficiency of the evidence on a motion to dismiss in the trial court is the same as that on appeal. It is whether, considering the state's evidence in the most favorable light, the evidence adduced, believed and rationally considered, is sufficient to prove the defendant's guilt beyond a reasonable doubt. *State v. Gresens* (1968), 40 Wis. 2d 179, 181, 161 N.W. 2d 245; *Welsher v. State* (1965), 28 Wis. 2d 160, 166, 135 N.W. 2d 849."

In *Welsher v. State,* 28 Wis. 2d 160, 165, 135 N.W. 2d 849 (1965), the court quoting the trial court's language in denying a motion to dismiss stated:

" 'The court has no hesitancy in denying your motion. There are indeed inconsistencies in the testimony as to clothing. There is testimony that conflicts with the comment on the automobile. There are other factors in the defendant Welsher's favor, but there is by no means a sufficient case so the court can say, as a matter of law, the defendant is not guilty.' "

While the judge's language in the case was challenged as placing an improper burden on the defendant, this court found no error in the judge's comment. That trial judge recognized inconsistencies and conflicts in the testimony but applied the proper test that the evidence taken most favorably against the accused is sufficient if it will support a finding of guilt beyond a reasonable doubt.

The trial judge in the instant case did not apply the proper test as established by this court when as a matter of law he found the evidence all credible but too conflicting for the state to meet its burden on retrial. He did not look at the evidence most favorable to the state, which the jury could believe, in determining the state could not meet its burden. This judge could not

acquit by his own analysis of the evidence and therefore the majority is in error when it holds that no matter the judge's analysis of the evidence, no matter what he said, he meant to acquit.

I will not write at length on the issues concerning the statutory language "before jeopardy attaches" nor whether a trial court has the authority to prevent a retrial unless there is an acquittal because the majority does not reach those issues. If the judge only dismissed the complaint as I interpret he did and as he said he did, then that was an abuse of discretion and the issue of double jeopardy does not arise since he would be without authority to prevent a retrial.

I would reverse the trial court order and return the case to the circuit court for retrial.