PETERS, Plaintiff in error, v. STATE, Defendant in error.

*No. State 35. Argued April 4, 1969.—Decided May 6, 1969.*
(Also reported in 167 N. W. 2d 250.)

544

For the plaintiff in error there were briefs and oral argument by *James H. McDermott,* state public defender.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, *William A. Platz,* assistant attorney general, and *Burleigh Randolph,* district attorney of La Crosse county.

BEILFUSS, J. Defendant's first contention is that the verdict of guilty as to Count 2 is so unintelligible as to require the granting of a new trial.

The verdict returned as to the second count is as follows:

"We the jury find the defendant, Rollin J. Peters, guilty of theft between January 8, 1965 and April 4, 1965, by virtue of his employment as charged in the second count of the Information and find the value of money stolen to be $4843.72."

Defendant does not attack the language of the verdict itself but does attack the language of the information to which it relates. It is argued that Count 2 actually consists of two charges: (1) That Peters embezzled money belonging to NCC, or (2) he embezzled money

belonging to Stokes. The defendant argues that because of the alternatives of Count 2 in the information he does not know what the jury found him guilty of illegally doing.

In actuality, defendant does not challenge the verdict, he challenges the information. The verdict is patently clear upon its face and is susceptible of but one meaning, that the defendant is guilty of whatever is charged in Count 2.

Count 2 does not charge two separate and distinct violations of the statute, as argued by the defendant. It contains but one allegation of embezzlement, with ownership of the money charged in the alternative: ". . . that if said money did not belong to the Corporation, the said Corporation held said money as Trustee for another, to-wit: Clarence J. Stokes. . . ." The complaint, in effect, clearly states that in either case the money was taken without the consent of the owner.

It is stated in 26 Am. Jur. 2d, *Embezzlement,* p. 592, sec. 39:

"In charging the offense of embezzlement, it is generally necessary to allege that the wrongful appropriation was of the property of another. Unless the rule is modified by statute, the allegation as to ownership must, again, be as accurate as that in an indictment for larceny, and must state the name of the person to whom the property belongs and the fact of his ownership. The purposes of charging ownership in an indictment for embezzlement are to show that the title or ownership is not in the accused, to bring notice to the accused of the particular offense for which he is called to answer and to bar subsequent prosecution of the accused for the same offense."

In 23A C. J. S., *Criminal Law,* p. 1055, sec. 1393, the rule is stated as follows:

"A verdict is sufficient in form if it decides the question in issue in such a way as to enable the court intelligently to base a judgment thereon; it is sufficient where

a judgment properly rendered on it will bar another prosecution for the same offense. . . . A form of verdict susceptible of two meanings in view of the language of the information is not objectional when, in accordance with either meaning, accused is guilty under the same statute."

The statute involved is sec. 943.20. In part, it is as follows:

"**Theft.** (1) Whoever does any of the following may be penalized as provided in sub. (3) :

" . . .

"(b) By virtue of his office, business or employment, or as trustee or bailee, having possession or custody of money or of a negotiable security, instrument, paper or other negotiable writing of another, intentionally uses, transfers, conceals, or retains possession of such money, security, instrument, paper or writing without the owner's consent, contrary to his authority, and with intent to convert to his own use or to the use of any other person except the owner. . . ."

The second count of the information alleged that NCC was the owner of the money, but if not the owner it was the trustee for the benefit of Stokes. In either event the unlawful conversion of the money was a single offense.

It is clear from the evidence that there was one and only one $5,000 account, the proceeds of which were obtained from Stokes for the specific purpose of complying with the statutory surety bond requirement for fund raisers. Whether it was a loan to NCC or Stokes' money held in trust by NCC is immaterial. It was a separate and distinct single fund obtained for a specific purpose. The jury by its verdict clearly found the defendant embezzled the major part of this fund. The court could and did render an intelligent judgment thereon and the conviction most certainly is a bar to a second prosecution for embezzlement or theft of the $5,000 fund obtained from Stokes and deposited in the account of NCC. The verdict is intelligible and a sound basis for the judgment of the court.

The defendant's second contention is that the evidence adduced, believed and rationally considered by the jury was insufficient to prove his guilt beyond a reasonable doubt. The heart of his contention is that Stokes loaned the money to Peters personally, and thereafter Peters, as the owner of the funds, could do with it as he pleased.

Defendant contends that repeated reference in the transcript to the fact that Stokes gave the money to Peters, e.g., "Q. Now did you give him the money? A. Yes. Q. How much did you give him? A. $5,000.00," is evidence of a personal loan.

When read together with all of Stokes' testimony the jury could believe the statements are evidence only of the fact that Stokes physically handed the check to Peters. And, as Stokes testified, the money ". . . was supposed to be used for a bond and that the State demanded a deposit of that amount of money in order to do any soliciting for the National Charity Corporation."

The defendant further contends that the fact that Peters paid the first month's interest on the loan is further evidence of a personal loan. Peters, as business manager, handled all the business matters of the corporation. He alone would perform the physical acts of paying its debts. The payment of one month's interest does not compel a finding it was a personal loan to the defendant.

It is also argued that the by-laws of the corporation gave the defendant virtually unrestricted authority to make withdrawals:

"BE IT RESOLVED That the COULEE STATE BANK in the City of La Crosse, State of Wisconsin, be and it is hereby selected and designated as the depositary of and for the moneys and funds of this corporation; that all of the moneys and all of the funds of this corporation shall hereafter be deposited in and with said Bank and that such moneys and funds may be withdrawn or charged only upon checks, orders and drafts signed by the Manager of this Corporation.

"BE IT FURTHER RESOLVED that said Bank is hereby authorized to pay any such instrument or make any such

charge and also to receive the same from the payee or any other holder without inquiry as to the circumstances of issue or the disposition of the proceeds even if drawn to the individual order of any signing person or payable to said Bank or others for his account, or tendered in payment of his individual obligation, and whether drawn against an account in the name of this corporation or in the name of any officer or agent of this corporation as such."

Those sections authorized Peters to deal with the bank and it authorized the bank to honor his withdrawals without inquiry into the purpose of the withdrawal,— in effect saving the bank harmless. In no way can the sections be read as authorizing Peters to embezzle the corporation's funds.

The contention that the loan was personal is without merit. Peters wrote to Stokes on NCC letterhead acknowledging receipt of the money, signing as manager of NCC:

"This letter will serve as a receipt, or note, to acknowledge your personal check for $5,000.00. Further, as agreed the National Charity Corporation will be responsible for the return of this money with-in 60 days from the above date.

"Also as agreed, the NCC will pay 6% interest, each 30 day period untill [sic] the note is repaid. In addition to this interest, the NCC will also pay a bonus of $250.00 as per our verbal agreement.

"I believe that this Corporation will have a steady grouth [sic] due to the type assistance we are going to provide. I would certainly say that this money will help us to establish our Corporation with many Americans who believe as we, that Communism is indeed a serious threat to this Hemisphere.

"I hereby state that the NCC will always reflect the best interest to the need of Honorable Exiles, and hope that this Corporation will be so mentioned along with other organizations doing similar work.

"I have been granted the power to execute this letter, or note, and hereby bind the NCC to the above agreement. This letter, or note, will be so honored, when presented by you, or when the NCC can meet the obligation. As agreed,

the NCC has the right to call in this letter, or note at any time according to our verbal agreement, and further to repay the loan, with proper interest, anytime before the 60 day period."

Clearly the references in the transcript to Stokes' loaning the money to Peters were references to Peters in his corporate capacity as business manager. The money was, therefore, loaned to the corporation and was in its possession prior to when Peters withdrew the funds and converted them to his own use.

In the verdict the jury found that the amount embezzled was $4,843.72. The amount withdrawn from the account as of April 4, 1965, was $4,895.12.

Defendant contends that the state has failed to establish that the defendant embezzled $4,843.72 beyond a reasonable doubt because the record contains no discernible or readily identifiable credible evidence sufficient to convince a jury that that amount was embezzled.

The record reveals that the defendant systematically reduced the NCC account in receiving the money in cash or transferring sums to his personal account which were used by the defendant to pay his personal expenses and debts.

From an examination of the record we conclude the jury could have found that the defendant embezzled the entire amount alleged in the information. The variance is slight and immaterial. The fact that the jury found a lesser amount than the proof would sustain is in no way prejudicial to the defendant.

The defendant received a three year sentence. In the theft statute, sec. 943.20 (1) (a) defines the crime of embezzlement. Value is important to the crime only with reference to the punishment.[1] Thus, where the state has proved any one sum that would support the sentence, that

[1] Sec. 943.20 (3) (c). "If the value of the property exceeds $2,500, a fine of not more than $10,000 or imprisonment for not more than 15 years or both."

sentence should stand. Where the embezzlement is complex, amounting to a myriad of transactions, some traceable and some not, the state should not be required to prove the total amount of money embezzled, but just such amount as will support the sentence imposed. As a general rule, wide latitude is allowed in proving the amount charged to have been embezzled. 26 Am. Jur. 2d, *Embezzlement,* pp. 596, 597, sec. 43.

The state proved, for example, that on January 20, 1965, the defendant withdrew $3,700 from the NCC account and deposited that amount in his personal account, Exhibits 6 and 9, which at the time contained only $3.96. Within a period of seven days he reduced his personal account $662.75, paying such personal items for example as a $100 pharmacy bill and a $254 furniture bill. At no time during this period were other sums added to his personal account.

Numerous other examples could be shown, all of which amply support the amount found by the jury and the sentence imposed.

*By the Court.*—Judgment affirmed.