STATE, Respondent, v. ZICK, Appellant.

*No. State 85. Argued October 3, 1969.—Decided October 31, 1969.*
(Also reported in 171 N. W. 2d 430.)

For the appellant there was a brief by *Conway & Conway* of Baraboo, and oral argument by *Vaughn S. Conway*.

For the respondent the cause was argued by *Albert Harriman*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

HALLOWS, C. J.   The case was originally scheduled for trial in the county court, but Zick demanded a 12-man jury and the case was transferred to the circuit court for Dane county. Two questions are presented: (1) is the form of the verdict correct, and (2) is the evidence sufficient to sustain the conviction?

Zick was arrested by a state patrol trooper about 4:30 in the morning of May 16, 1967, on I–90 after the trooper had followed Zick's car for some 20 miles. The uniform traffic citation and complaint ticket authorized by the Wisconsin motor vehicle department was issued to Zick. The ticket states that Zick unlawfully operated a motor vehicle upon highway I–90 at the junction with Drotning road by speeding 90 miles per hour in a 60-miles-per-hour area, 30 miles per hour over the limit. The description of the violation is set forth as "NIGHT SPEEDING IN ZONED AREA, in violation of section 346.57 (5)." At the trial Zick argued, as he does here, that the state was required to proceed on the theory the complaint charged him with speeding 90 miles per hour and if the state did not prove that speed, he was to be found not guilty; or in the alternative, that the complaint charged him with violating the statute and the exact rate of excess speed was not an issue.

The trial proceeded on the theory that under the complaint, proof of any rate of excess speed was sufficient to support a conviction for speeding and in addition, the jury could determine from the evidence what the rate of speed was.

The verdict submitted to the jury was in two forms. One form of the verdict found Zick not guilty; the other provided, "We, the Jury, find the defendant, Gene R. Zick, guilty of speeding at the time and place charged in the Complaint and find the speed at which he drove was ———— miles per hour." The jury was instructed in answering this question that if they were satisfied beyond a reasonable doubt that defendant traveled at a speed in excess of 60 miles per hour they should sign the guilty verdict and insert therein the actual speed at which they found beyond a reasonable doubt that Zick drove. The jury used this verdict and inserted 90 miles per hour; and thus found the defendant guilty of speeding and also the exact rate of speed.

Zick argues this form of the verdict is incorrect because he was charged not with just speeding but speeding at 90 miles per hour. The argument of Zick seeks to apply conversely the holding in *Milwaukee v. Wroblewski* (1969), 43 Wis. 2d 603, 168 N. W. 2d 829, wherein this court held that a trial court could properly conclude that a particular traffic ordinance had been violated without making a finding as to the precise speed. In that case the exact speed was not charged and there was no finding of a rate of speed in excess of the permissible maximum. The defendant argues conversely that where the exact speed in excess of the maximum is charged, the state should prove it or the defendant should be found not guilty.

In form it may be argued, as Zick does, the uniform traffic citation and complaint ticket charges Zick with speeding 90 miles per hour and unless the speed stated in the ticket is proved, the charge fails. Some courts in

this state have so held. However, other trial judges have held the violation of sec. 346.57 (5), Stats., is not the rate of excess speed but any speed in excess of the maximum speed permitted and the exact rate of speed is not an element of the offense. The Vehicle Code of Wisconsin, sec. 346.57 (5), forbids the operation of a motor vehicle in excess of any speed limit established pursuant to law by state or local authorities and indicated by official signs. For the purpose of this argument, 60 miles per hour was the established speed limit at the time and place of the alleged violation as indicated by official signs. Under this section we hold the state may charge a defendant with speeding and also state the excess rate of speed and such charge may be sustained by proof of any speed in excess of the maximum permissible speed. Although the exact rate of speed found need not conform to the rate of speed stated in the ticket it is important in determining the punishment and points and must be proved beyond a reasonable doubt. For this dual purpose, it is proper to use the form of verdict which was used in this case.

This situation is somewhat analogous to that of theft in sec. 943.20 (3) (c), Stats., which provides penalties depending upon the value of the property involved. The value of the property alleged in the information need not be proved under sec. 943.20 (1) so long as some value is proved and the amount proved determines the penalty. Thus, the value of the property does not determine the crime of theft but the punishment. *Peters v. State* (1969), 42 Wis. 2d 541, 551, 167 N. W. 2d 250; *see also* 23A C. J. S., *Criminal Law,* p. 1055, sec. 1393.

Zick contends he should have a new trial because the credible evidence was not sufficient to establish his guilt beyond a reasonable doubt. He claims a reasonable doubt exists in respect to the proof of the speed limit of 60 miles per hour on highway I–90. Sec. 346.57 (5), Stats., requires the speed limits to be established pursuant to

law by state or local authorities and to be indicated by official signs. Zick admits the 60-miles-per-hour speed limit for night driving was posted at the time and place where the alleged violation occurred; but he argues the state did not prove such speed limit was in fact established by the state highway commission. The posting of state speed-limits signs makes applicable the common-law presumption that state authorities properly performed their official duties in establishing such speed limits. As applied to these facts the presumption is prima facie proof the highway commission properly established the speed limits on I–90. This common-law presumption that public officials have complied with all statutory requirements in performing their duties is well established in this state. *Bartlett v. Joint County School Comm.* (1960), 11 Wis. 2d 588, 106 N. W. 2d 295; *Marshall Drainage Dist. v. Festge* (1956), 272 Wis. 114, 74 N. W. 2d 616; *Bohn v. Sauk County* (1954), 268 Wis. 213, 67 N. W. 2d 288; *see Reinders v. Washington County School Comm.* (1962), 15 Wis. 2d 517, 113 N. W. 2d 141.

Zick next contends the credible evidence is not sufficient to support the finding of 90-miles-per-hour speed. The arresting officer testified he followed Zick's car for approximately 20 miles. During that distance he made two speed checks. One showed a speed of 90 miles per hour and the other showed a speed of 95 miles per hour. These checks were made by pacing the defendant's car some half mile to its rear. Defendant claims there is a reasonable doubt as to the speed because: (1) The speedometer on the squad car was not accurate, and (2) the car was not properly identified by means of a defective taillight.

As to the speedometer, it was testified that a check was made for accuracy nineteen days prior to and seventeen days subsequent to the arrest. The accuracy of the speedometer was checked by the use of a trackometer. The first check showed the speedometer on the squad car was

accurate at speeds of 20 and 30 miles per hour but slow one mile per hour at 40 miles and five miles slow at 90 miles per hour. On the check of the speedometer after the arrest, the speedometer was found to be accurate at all speeds excepting it was one mile per hour fast at 30 miles per hour. Somewhere in between these dates the squad car was taken in for repair work on its differential but the record does not show whether this work was done prior to or after the arrest.

The inaccuracy of the speedometer is in Zick's favor if the repair work, which presumably changed the operation of the speedometer, was done after the arrest. If the repair work was done prior to the arrest, then presumably the speedometer was accurate at the time of the arrest. In either event the inaccuracy was such as not to create a doubt of the correctness of the speed of 90 miles per hour, as one check showed 95 and the other showed 90 miles per hour. We cannot disregard the readings of the speedometer on the ground of this inaccuracy. Compensation therefor can be reasonably made in estimating the speed. Speedometers, like watches, cannot be expected to be absolutely perfect. True, there is testimony by Zick that he was not traveling 90 miles per hour and if believed would be sufficient to destroy the finding of traveling at that rate of speed, but this testimony the jury did not believe.

We think, too, that the missing taillight is a question for a jury. Whether one of the taillights was out or part of a taillight was out is a question of fact. The officer testified the taillight was out. He had received a report of a speeding car with one taillight out and, therefore, was watching for it. The owner of the car, who was a passenger therein, stated the taillight was not out to his knowledge. There is no evidence there were other cars on the highway at the time so it could reasonably be said the officer was confused in his identification of the automobile he was pacing to clock for speeding. We

think the jury could reasonably believe the officer clocked the defendant's car.

On appeal, as Zick points out, the test is not whether this court is convinced or believes the evidence but whether as we stated in *Lock v. State* (1966), 31 Wis. 2d 110, 142 N. W. 2d 183, and in *State v. John* (1960), 11 Wis. 2d 1, 103 N. W. 2d 304, this court can conclude the trier of the facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true. In order to reverse, we would have to hold that as a matter of law no jury could be so convinced by the credible evidence presented. In this case we cannot so hold.

*By the Court.*—Judgment affirmed.