BERE, Plaintiff in error, v. STATE, Defendant in error.

*No. 75–792–CR. Submitted on briefs March 1, 1977.—*
*Decided March 29, 1977.*
(Also reported in 251 N. W. 2d 814.)

516

For the plaintiff in error the cause was submitted on the briefs of *Howard B. Eisenberg,* state public defender, and *Mark Lukoff,* assistant state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Michael R. Klos,* assistant attorney general.

CONNOR T. HANSEN, J. The offense for which the defendant was convicted arose out of an incident which occurred at the Gordon State Prison Camp while defendant was detained there as an inmate on May 15 and 16, 1975. The property involved was a bus owned by the Department of Natural Resources and utilized at the camp to transport inmates to work projects.

Prior to the commencement of the trial and out of the presence of the jury, a combination *Miranda-Goodchild* hearing was held to determine the voluntariness of a written confession to the charged crime given by the defendant on June 9, 1975. The trial court found that the statement had been voluntarily given after the defendant had been properly informed of, understood, and waived his *Miranda* rights and thus could be introduced at trial. The substance of the statement will be discussed later.

The State called as its first witness Randy Charles Bockorny. Bockorny testified that he knew the defendant and on the evening of May 15, 1975, he observed the defendant running from the area where the bus was

parked, across a basketball court and into the barracks bathroom. Bockorny was curious as to what was taking place. He went into the bathroom and confronted the defendant. He observed the defendant in the bathroom with oil on his clothes, oil on his tennis shoes, and with a pliers in his hands. Bockorny testified that the defendant stated to him that he had just pulled the plug, or loosened the plug, on the oil pan of the bus so that he wouldn't have to go to work the next day. The defendant further told Bockorny that he was going to burn his jacket or bury it down by the river.

Superintendent Leonard Fromolz testified that the bus in question, a 1970 International Harvester, 36 passenger, belonged to the Department of Natural Resources but was under his custody and control at the camp. He stated that on the morning of May 16, 1975, the bus left camp with a crew of inmates; broke down a little way out of camp; had to be towed back to camp; and eventually was taken to Duluth, Minnesota, for repairs. Fromolz testified that he had never given the defendant permission to damage the bus.

Fromolz identified and read into the record a written and signed statement given to him by the defendant on June 9, 1975. In it, the defendant admitted that he had pulled the oil plug completely out of the bus and then screwed it back in just enough to hold it. The defendant stated that he did so because he thought that he would not have to work if the bus was broken down. Fromolz also identified and read into the record three letters which the defendant had voluntarily written to him after the incident and while the defendant was in the Douglas county jail. In all three letters, the defendant admitted his guilt and apologized for the trouble he caused. Fromolz stated that on June 8, 1975, the defendant had given a statement in which he did not incriminate himself. The defendant refused to sign the statement, how-

ever; retracted what was in it; and eventually made and signed the June 9th statement.

On cross-examination, Fromolz testified that on May 16, 1975, he had received a report that sugar or some other substance had been dumped into the gas tank of the bus. A subsequent crime lab analysis of a brown granular substance removed from the gas tank by the garage in Duluth indicated that the substance was salt. Fromolz stated that there was no indication that the defendant had dumped the salt into the tank. He, in fact, was told by other inmates that an inmate named DeBay had done the deed. Fromolz testified that he never followed up on the matter because DeBay had been transferred and that "We didn't persue [sic] it because they said it didn't do any damage."

Richard Foster, employee of the International Harvester Company in Duluth, testified that the value of a bus similar to the one damaged would have been $3,000–$5,000 on May 15, 1975. He stated that the replacement cost would have been $10,000–$12,000. Foster testified that he had never seen the bus in question, but that his appraisal was based on his experience and that to set a value within the above range he would not necessarily have to see the bus. He stated that his estimated $3,000–$5,000 value would be based on the assumption that the bus engine was running. Foster testified that the bus in question was in his employer's shop. He identified the job ticket for the repair of a bus engine; noted that it stated "Repair engine as needed"; testified that apparently it was discovered that the engine needed replacing and other repair work; and noted that the cost of labor for the replacement of the engine was $508 and the approximate cost of engine parts was $900.

John Payne, the superintendent of the Brule River State Forest, identified the job ticket as the only bill in his records for the bus in question; stated that that bus was the only DNR bus in Douglas county; stated that

he kept the records for the vehicles in Douglas county; and stated that to his knowledge no other repairs had been made to the bus by the International Harvester Company in Duluth. The copy of the job ticket was admitted into evidence.

At the conclusion of the State's case, the defendant moved to dismiss on grounds that there had been no testimony that the damage was caused by " 'pulling out the plug,' " and no showing that the repairs were made necessary by that fact rather than for any other reason. The defense counsel pointed out that there was "stuff" found in the gas tank. The motion was denied.

The defendant categorically denied having taken the plug out of the bus. He testified that on the evening of May 15, 1975, he had heard someone say, ". . . 'Someone took the oil plug out,' . . ." He went out and attemped to put the plug back in and in the process got oil on his clothes from the four or five quarts which had drained out. The defendant testified that he put the plug back in to protect the other inmates from getting sent back to Waupun or Green Bay and from losing other privileges. The defendant denied having confessed to Bockorny and stated that he only wanted to bury his oil-stained clothes because he didn't want to be involved. The defendant further testified that he was lying in the June 9, 1975, statement and in all three of the letters which incriminated him. He stated that he had signed the June 9th statement and had written the letters because he wanted to protect the other inmates and he thought that the effect of his letters would be to cause the real culprit to come forward. The defendant stated that on the afternoon of May 15, 1975, inmate DeBay put a substance which he thought was sugar into the gas tank of the bus.

Ronald G. Beckwith, another inmate of the camp, testified that he had heard that DeBay had put sugar in the gas tank of the bus on the afternoon of May 15,

1975, while the bus was in the woods. He stated that the bus made it back to camp, however, without any trouble. Beckwith was on the bus on the morning of the 16th of May. He testified that then it was "Conking out and it was smoking. Had a foul smell to it." Beckwith further testified that the bus was generally treated roughly and that on some previous unspecified day the driver drove over or ran into stumps two or three times with the motor. Beckwith testified that he had previously made a statement in which he implicated Bockorny and an inmate named McNaughton in the damaging of the bus. Beckwith made the statement on June 5, 1975, in the hopes of mitigating an escape charge which he had pending against him. Beckwith retracted the statement the day after he gave it.

Following his conviction, sentencing and the denial of his post-conviction motions, the defendant brings this review and raises the following issues:

1. Did the trial court err in denying the defendant's motion to dismiss the information at the conclusion of the State's case?

2. Was the evidence sufficient to prove beyond a reasonable doubt that the defendant's acts caused damage in excess of $1,000?

3. Did the trial court commit prejudicial error in allowing witness Fromolz to testify as to what he was told about the effect of salt in a gas tank?

4. Did the trial court abuse its discretion in sentencing the defendant?

5. Should a new trial be granted in the interests of justice?

At the conclusion of the State's case, the defendant moved to dismiss the information.[1] The motion was de-

---

[1] In his brief the defendant states this question as, whether the trial court erred in not dismissing the information at the end of the case. The record reflects that the motion to dismiss was made at the end of the *State's* case. No subsequent motion for a directed verdict was made at the conclusion of the trial.

nied. On review the defendant argues that there was no testimony in the State's case as to what caused the damage to the bus. The defendant asserts that there was evidence presented which showed that an unknown inmate had poured salt into the gas tank of the bus and evidence which showed that the bus had been driven into or over a stump. Thus, according to the defendant, the State failed to prove which damage was attributable to the defendant and which was attributable to other causes.

It appears that the defendant misconceives the appropriate test of a denial of a motion to dismiss and also applies it in part to evidence that was not before the trial court at the conclusion of the State's case.

A motion to dismiss is addressed to the proposition of whether the evidence taken most favorably to the prosecution is sufficient to support a finding of guilt beyond a reasonable doubt. *State v. Gresens,* 40 Wis.2d 179, 181, 161 N.W.2d 245 (1968), *Welsher v. State,* 28 Wis.2d 160, 166, 135 N.W.2d 849 (1965). Since the motion to dismiss comes at the conclusion of the State's case, it is the obligation of the trial court to determine whether the jury, acting reasonably and construing the evidence then available in favor of the prosecution, could find guilt beyond a reasonable doubt. Two concepts deserve emphasis: (1) That the only evidence considered is that adduced during the State's case; and (2) that that evidence must be construed most favorably to the prosecution.

The test of beyond a reasonable doubt does not exclude every possible doubt. As this court stated in *State v. Johnson,* 11 Wis.2d 130, 135, 136, 104 N.W.2d 379 (1960), it is that moral certainty which ". . . 'is a reasonable certitude or conviction based on convincing reasons and excludes all doubts that a contrary or opposite conclu-

sion can exist based on any reasons . . .'" Only the evidence which the trier of fact could reasonably believe and rely upon (and not all of the evidence adduced) must be consistent with every reasonable theory of innocence. *Peters v. State,* 70 Wis.2d 22, footnote 14, 233 N.W.2d 420 (1975). On appeal, or on a motion to dismiss, this court is not concerned with evidence which might support other theories of the crime. It is concerned only with ascertaining whether a trier of fact could, acting reasonably, exclude the other theories and make findings supporting the defendant's guilt. *Johnson v. State,* 55 Wis.2d 144, 148, 197 N.W.2d 760 (1972); *State v. Zdiarstek,* 53 Wis.2d 776, 784, 785, 193 N.W.2d 833 (1972); *State v. Lindsey,* 53 Wis.2d 759, 768, 193 N.W. 2d 699 (1972).

In *State v. Duda,* 60 Wis.2d 431, 210 N.W.2d 763 (1973), this court expressed the appropriate test to be applied on a motion to dismiss. This court stated at p. 439:

". . . The test of the sufficiency of the evidence on a motion to dismiss in the trial court is the same as that on appeal. It is whether, considering the state's evidence in the most favorable light, the evidence adduced, believed and rationally considered, is sufficient to prove the defendant's guilt beyond a reasonable doubt. . . ."

*See also: State v. Powers,* 66 Wis.2d 84, 94, 224 N.W.2d 206 (1974).

The motion to dismiss the information was made at the close of the State's case. It was not restated as a motion for a directed verdict at the close of the defense case. Thus, at that point the only evidence which the trial court could consider most favorably to the prosecution was the evidence adduced in the State's case.

Section 943.01(1), Stats., reads:

"*943.01 Criminal damage to property.* (1) Whoever intentionally causes damage to any physical property of another without his consent may be fined not more than $200 or imprisoned not more than 6 months or both."

Section 943.01(3), Stats., provides for an increased penalty if the property damaged is reduced in value by more than $1,000:

"(3) If the total property damaged in violation of this section is reduced in value by more than $1,000, the person may be fined not more than $1,000 or imprisoned not more than 5 years or both. For the purposes of this subsection, property is reduced in value by the amount which it would cost either to repair or replace it, whichever is less."

In order to sustain a conviction under sec. 943.01(1), and (3), Stats., the State must prove beyond a reasonable doubt the following elements: (These elements presently appear in Wis JI—*Criminal*, Part II, sec. 1400.)

"First, that the defendant caused damage to physical property;
"Second, that the defendant intended to cause such damage;
"Third, that such property was the property of another;
"Fourth, that the defendant did not have the other's consent to cause such damage;
"Fifth, that the defendant knew it was the property of another and that he did not have the other's consent to damage it."

In addition, in order to support an increased penalty under sec. 943.01(3), Stats., the State must prove beyond a reasonable doubt that the property was reduced in value by more than $1,000. By statutory definition "reduced in value" is defined to be the cost to repair or replace the property, whichever is less. The increased

penalty provision is not an element of the crime of criminal damage to property in that it is only determinative of possible punishments. *See: Sartin v. State,* 44 Wis.2d 138, 170 N.W.2d 727 (1969), and *Peters v. State,* 42 Wis.2d 541, 167 N.W.2d 250 (1969).

The question is whether a jury acting reasonably and construing the evidence most favorably to the prosecution, could have found the defendant guilty beyond a reasonable doubt.

Viewed most favorably to the prosecution, there was credible evidence that the defendant removed the oil plug, and thereby intended to damage the bus. There could be no question that the bus belonged to the DNR; that the defendant had no consent to damage the bus; or that the defendant knew the above two facts. The inference which the defendant seeks to draw is that it was the salt in the gasoline rather than the lack of oil which caused the damage. A jury could properly reject such an inference. It was within the discretion of the trial court acting on this motion to dismiss, to determine that a jury could conclude that the bus engine running without oil would be damaged.

The evidence which had been presented by the State at the time the motion was made, was sufficient to prove beyond a reasonable doubt all the elements required by the statute. The testimony of Foster and Payne constituted evidence sufficient to prove beyond a reasonable doubt that the defendant caused damage or reduction in the value of over $1,000.

Even if the trial court did determine at that point that the evidence was not sufficient to prove property damage in excess of $1,000, the proper remedy would not have been a dismissal of the information, but rather an amend-

ment to a section 943.01(1), Stats., violation. *See:* sec. 971.29, and *Moore v. State,* 55 Wis.2d 1, 197 N.W.2d 820 (1972). The defendant argues that the "state's evidence" language from *State v. Duda, supra,* 439, should be withdrawn and *all* of the evidence must be considered. When the motion to dismiss comes at the end of the State's case, as it did in *State v. Duda, supra, Welsher, supra,* and here, the trial court necessarily considers only the State's evidence because that is the only evidence which has been adduced and which is on record. When the motion for a directed verdict comes at the conclusion of the defendant's case, as it did in *State v. Gresens, supra,* then the trial court can properly consider all of the evidence because it all has been adduced. There is no inconsistency in the cases noted by the defendant.

The trial court properly denied the defendant's motion to dismiss the information at the conclusion of the State's case.

The defendant contends that the evidence taken as a whole did not prove beyond a reasonable doubt that the defendant's acts caused damage in excess of $1,000. Under the provisions of sec. 943.01(3), Stats., the State was required to prove beyond a reasonable doubt that the bus was reduced in value by more than $1,000, and that the defendant's acts caused the reduction. The defendant contends that the evidence was insufficient to do both.

The test for this court's review of the sufficiency of evidence in criminal trials was set forth in *State ex rel. Kanieski v. Gagnon,* 54 Wis.2d 108, 113, 194 N.W.2d 808 (1972):

"While the state must prove defendant's guilt beyond a reasonable doubt, on appeal this court's review is limited to determining whether the evidence adduced,

believed and rationally considered by a jury was sufficient to prove defendant's guilt beyond a reasonable doubt. Reversal is required only when the evidence considered most favorably to the state and the conviction is so insufficient in probative value and force that it can be said as a matter of law that no trier of facts acting reasonably could be convinced to that degree of certitude which the law defines as beyond a reasonable doubt."

*See also: Garcia v. State,* 73 Wis.2d 174, 182, 242 N.W.2d 919 (1976); *Gilbertson v. State,* 69 Wis.2d 587, 593, 230 N.W.2d 874 (1975); *Bautista v. State,* 53 Wis.2d 218, 223, 191 N.W.2d 725 (1971); *State v. Davidson,* 44 Wis. 2d 177, 200, 170 N.W.2d 755 (1969).

From an examination of the record, we conclude there was abundant credible evidence to prove beyond a reasonable doubt that the acts of the defendant caused the damage or reduction in value of the bus in excess of $1,000. No useful purpose will be served by a further recitation of evidentiary facts.

Superintendent Fromolz testified, over objection, that he was informed (presumably by the state crime laboratory analyst) that salt placed in a gas tank would cause no damage to an automotive engine. He was not qualified as an expert to testify on this matter. Sec. 907.02, Stats.[2] He also admitted that he was unable to assess damages.[3] His testimony as to these facts constituted inadmissible hearsay.[4]

---

[2] *"907.02 Testimony by experts.* If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

[3] *"906.02 Lack of personal knowledge.* A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist

The issue is whether the error in admitting this testimony was so prejudicial as to require a new trial. In *Wold v. State,* 57 Wis.2d 344, 204 N.W.2d 482 (1973), this court stated the harmless error rule at page 356:

". . . The test of harmless error is not whether some harm has resulted, but, rather, whether the appellate court in its independent determination can conclude there is sufficient evidence, other than and uninfluenced by the inadmissible evidence, which would convict the defendant beyond a reasonable doubt. *See Harrington v. California* (1969), 395 U.S. 250, 89 Sup. Ct. 1726, 23 L. Ed. 2d 284. This test is based on reasonable probabilities. . . ."

Applied to the facts of this case, there was sufficient evidence in the record, independent of and uninfluenced by the inadmissible statements of Fromolz to support the jury's finding that the defendant criminally damaged property in excess of $1,000, and on which the jury could reasonably have rejected any theory that the salt caused the engine damage. There is no evidence in the record which would support even an inference that salt may have caused the engine damage. The mere possibility that salt may have caused the damage was not enough. Other evidence sufficiently ruled out the probability that it had such effect. The salt was apparently placed in the gas tank on the afternoon of May 15th while the bus was at a job site. The bus was operated and functioning without difficulties after that time. *Grennier v. State,* 70 Wis.2d 204, 216, 234 N.W.2d 316 (1975) ; *State v. Shaw,* 58 Wis.2d 25, 29, 205 N.W.2d 132 (1973).

---

of the testimony of the witness himself. This rule is subject to the provisions of s. 907.03 relating to opinion testimony by expert witnesses."

[4] *"908.02 Hearsay rule.* Hearsay is not admissible except as provided by these rules or by other rules adopted by the supreme court or by statute."

Since the jury could reasonably reject any theory that salt caused the engine damage, and since there was ample credible evidence independent of Fromolz's statement on which the jury could reasonably rely to do so, the admission into evidence of Fromolz's statement did not constitute prejudicial error.

The defendant contends that the trial court abused its discretion in sentencing him to 18 months' imprisonment to be served consecutive to the sentence which he was serving at the time of the commission of this offense.

In the recent case of *Harris v. State,* 75 Wis.2d 513, 519, 250 N.W.2d 7 (1977), this court, *citing McCleary v. State,* 49 Wis.2d 263, 274–276, 182 N.W.2d 512 (1971), set forth those factors which the trial court should consider in imposing sentence: Gravity of the offense; character of the offender; and the need for public protection. In addition, this court noted several other factors which the trial court could consider in arriving at a sentencing disposition. *Harris, supra,* 519, 520.

In *Gaddis v. State,* 63 Wis.2d 120, 129, 130, 216 N.W. 2d 527 (1974), this court held that it would modify a sentence only where an abuse of discretion was shown and that it would find an abuse of discretion where no rational basis for the sentence imposed existed or where the rationale for the sentence was not articulated or inferable from the record.

In the instant case, a review of the sentencing hearing transcript reveals that the trial court based its sentencing disposition upon the proper *McCleary* factors. Moreover, an examination of the record *ab initio* indicates a rational basis for the imposition of the sentence. *McCleary, supra,* 277, 278.

The sentencing disposition in the instant case shows that the trial court considered the character of the de-

fendant and the nature or gravity of the offense. The record reveals that the defendant was incarcerated for a recent felony offense and a misdemeanor when he committed the instant offense. The defendant, himself, stated that he had a "bad attitude" toward prison officers.

The defendant, as evidenced by his behavior, had made little progress toward rehabilitation. Given the opportunity for rehabilitation in the less restrictive atmosphere of the forest camp, he nevertheless committed an additional serious offense. The trial court could reasonably conclude that a concurrent sentence would have no impact on the defendant's attitude or behavior and thus that a consecutive sentence was necessary to both deter future misconduct while at state prison and to induce the defendant's cooperation.

The defendant could have received a consecutive five-year sentence to imprisonment for the offense. He received much less. The record is devoid of any evidence that the trial court abused its discretion in sentencing the defendant as it did.

Finally, the defendant asserts he should be granted a new trial in the interest of justice. This court has held many times that a new trial will be granted in the interest of justice only if it appears that justice has miscarried and that a retrial under optimum circumstances will produce a different result. *Organ v. State,* 65 Wis. 2d 36, 50, 221 N.W.2d 823 (1974). This is not such a case. The defendant advances the argument that "different result" might also refer to a conviction, in this case, for misdemeanor rather than felony criminal damage to property. Without again reviewing the facts, this contention is based upon the assertion that the State failed to prove damage attributable to the defendant in excess of $1,000. We have heretofore determined there was sufficient evidence to support his conviction for

criminal damage to property in violation of sec. 943.01 (1) and (3), Stats. He was fairly convicted of the crime charged on the basis of sufficient credible evidence. We are also satisfied the rights of the defendant were not prejudiced in any manner.

*By the Court.*—Judgment and order affirmed.