COURT OF APPEALS
DECISION
DATED AND FILED

April 30, 2020

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1619-CR**

Cir. Ct. No. **2013CF122**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

PHYLLIS M. SCHWERSENSKA,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Adams County: PAUL S. CURRAN, Judge. *Affirmed*.

Before Blanchard, Kloppenburg, and Nashold, JJ.

¶1 BLANCHARD, J. Phyllis Schwersenska appeals a judgment convicting her of theft, contrary to WIS. STAT. § 943.20(1)(b) (2017-18),[1] and felony

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

bail-jumping following a jury trial, as well as a subsequent order denying her post-conviction motion. The State's theory is that Schwersenska embezzled from a joint savings account that she held with her adult daughter, H.R. A jury found Schwersenska guilty of embezzling more than $10,000. *See* § 943.20(3)(c). Schwersenska argues that her trial counsel was constitutionally ineffective by failing to: (1) offer as evidence at trial the signature card for the joint savings account; (2) move for dismissal after the presentation of all evidence, based on Schwersenska's status as joint owner of the joint account; and (3) request a special jury instruction based on WIS. STAT. § 705.03(1), which addresses ownership of joint accounts generally, and our supreme court's decision in a civil case interpreting § 705.03(1) in one context. *See Russ v. Russ*, 2007 WI 83, 302 Wis. 2d 264, 734 N.W.2d 874. Schwersenska's three arguments are all premised on the theory that it was ineffective for Schwersenska's trial counsel not to present the following defense: Schwersenska could not have embezzled money from the joint account because, as a matter of law, all money in the account belonged both to Schwersenska and to H.R. as joint tenants (*i.e.*, no money in the account belonged solely to H.R.). We conclude that Schwersenska has not established that her trial counsel rendered ineffective assistance of counsel and accordingly affirm.

## BACKGROUND

¶2      In August 2013, the State filed a criminal complaint charging Schwersenska with one count of theft contrary to WIS. STAT. § 943.20(1)(b).[2] The

---

[2] WISCONSIN STAT. § 943.20(1)(b) criminalizes conduct that we will sometimes refer to as embezzlement. It reads in full:

> By virtue of his or her office, business or employment, or as trustee or bailee, having possession or custody of money or of a negotiable security, instrument, paper or other negotiable

2

complaint also charged one count of felony bail jumping contrary to WIS. STAT. § 946.49(1)(b).[3]

¶3 It was undisputed at trial that the bank account in question was a joint account and that the only account holders were Schwersenska and H.R.

¶4 The essence of the embezzlement charge was that, on multiple occasions between October 2010 and July 2012, Schwersenska improperly

---

writing of another, intentionally uses, transfers, conceals, or retains possession of such money, security, instrument, paper or writing without the owner's consent, contrary to his or her authority, and with intent to convert to his or her own use or to the use of any other person except the owner. A refusal to deliver any money or a negotiable security, instrument, paper or other negotiable writing, which is in his or her possession or custody by virtue of his or her office, business or employment, or as trustee or bailee, upon demand of the person entitled to receive it, or as required by law, is prima facie evidence of an intent to convert to his or her own use within the meaning of this paragraph.

To obtain a conviction under § 943.20(1)(b), the State must prove, in pertinent part, each of the following elements beyond a reasonable doubt:

> 1. The defendant had possession of money belonging to another because of [his or her] office.

> 2. The defendant intentionally used the money without the owner's consent and contrary to the defendant's authority.

> 3. The defendant knew that the use of the money was without the owner's consent and contrary to the defendant's authority.

> 4. The defendant intended to convert the money to [his or her own use or the use of any other person].

*See* WIS JI—CRIMINAL 1444; *see also* **State v. Doss**, 2008 WI 93, ¶57, 312 Wis. 2d 570, 754 N.W.2d 150 (citing WIS JI—CRIMINAL 1444 & Comment n.1; **State v. Blaisdell**, 85 Wis. 2d 172, 176, 270 N.W.2d 69 (1978)).

[3] There is no dispute that Schwersenska's conviction for bail jumping depends on her being convicted of theft, and Schwersenska raises no independent ground on which to reverse the bail-jumping charge. We discuss the bail jumping topic no further.

withdrew and made personal use of money held in the joint account without getting permission from H.R. During this time period Schwersenska and H.R. not only shared the joint account, but in addition there was a purported durable power of attorney in place under which Schwersenska was to act as H.R.'s fiduciary. However, as discussed in detail in the Discussion section below, it was disputed at trial whether the power of attorney was valid.

¶5 At trial, H.R. testified in part as follows. She has been deaf since infancy. During all pertinent times she was an adult living independently from Schwersenska. H.R.'s personal bills, which were introduced as evidence at trial, reflected all of her major expenses. H.R. could not recall any spending that she had done or approved of that would explain withdrawals from the account that exceeded the money needed to cover her bills. H.R. did not lend or gift large amounts of money to family members.

¶6 H.R. made repeated references in her testimony that were to the following effect: at least some amount of the money deposited into the joint account was "my money" and the joint account was "my account." The money that H.R. referred to as her individual property included $30,000 in proceeds from a lawsuit settlement that H.R. received. This $30,000 was deposited into the joint account in October 2010. Further, H.R. testified that, beginning in 2011, she started monitoring online the balance and transaction history of the joint account. This allowed her to discover that money that she had understood to be her individual property was "missing" from the joint account and that there had been withdrawals from the account that she had not known about and had not authorized.

¶7 The investigating police officer testified in part as follows. Based on his interactions with H.R. and Schwersenska, and his analysis of pertinent bank

records and of H.R.'s bills and receipts, he had reached two conclusions. First, a significantly greater number of withdrawals had been made in Schwersenska's name than in H.R.'s name between October 2010 and July 2012. Second, the total amount withdrawn in Schwersenska's name was far larger than H.R.'s total expenditures during that same time period.

¶8 To understand the arguments raised on appeal, it is helpful to be familiar with the basic theories of each side at trial.

¶9 Between the argument in chief and the rebuttal argument, the prosecutor made points that included the following.[4] At least from the time that H.R.'s lawsuit settlement proceeds were deposited into the joint account through the commencement of the criminal investigation, all or most of the money in the account belonged exclusively to H.R., based on the apparent source of each deposit. This argument was based on bank records submitted to the jury showing that, during the pertinent time period, the joint account was funded almost entirely by the lawsuit settlement proceeds, along with other sources of income attributable exclusively to H.R. The prosecutor argued that the power of attorney did validly appoint Schwersenska to act as H.R.'s fiduciary agent. At the same time, the State also took the position that it did not matter whether there was a valid power of attorney in place—what mattered was an *intent* of the parties to execute the power of attorney, which revealed Schwersenska's understanding that she was to safeguard H.R.'s money in the account. This intent, the State contended, was proven through the testimony of H.R. and the police officer supporting the reasonable inference that Schwersenska desired to have a power of attorney in place, under which

---

[4] The transcript of the prosecution's closing argument is at times difficult to follow. Key aspects of the argument are left unexplained except by implication, such as how evidence that the prosecutor highlighted in closing established specific elements of embezzlement.

5

Schwersenska would act in H.R.'s interest in handling H.R.'s money in the joint account.

¶10     With this as the framework, the State's theory focused heavily on the police officer's analysis of the bank records and H.R.'s bill receipts, specifically comparing (1) the total value of the withdrawals by Schwersenska (including at least $10,000 in spending on persons other than H.R.), with (2) H.R.'s bills and H.R.s testimony about her limited expenses.   This comparison, the State suggested, showed that Schwersenska must have used H.R.'s individually owned money to benefit herself and others, not to benefit H.R.

¶11     In closing, Schwersenska's defense counsel made arguments that included the following.  Assuming that Schwersenska held a valid power of attorney to act as fiduciary agent for H.R., the State was required to prove beyond a reasonable doubt that Schwersenska embezzled "from the power of attorney portion" of the joint account.  This was impossible, defense counsel argued, because the State was unable to point to a reliable total amount of money that Schwersenska allegedly withdrew from the joint account and spent outside of her proper authority.  The defense also challenged H.R.'s credibility based on inconsistent aspects of her testimony, for example giving varying estimates of how much Schwersenska withdrew *with* authorization—either to obtain cash to give to H.R. or to directly pay H.R.'s bills.

¶12     At the same time, defense counsel also contended that the State had failed to establish that there was a valid power of attorney appointing Schwersenska as H.R.'s agent.  Defense counsel essentially argued that, without a valid power of attorney in place, Schwersenska shared equally with H.R. unfettered control over, and access to, the joint account.  This would have included the ability to, in trial

counsel's words, "take[] all the money in one full scoop [sic: fell swoop] because it's [Schwersenska's] joint bank account." That is, no one could have prevented Schwersenska from withdrawing any portion or all of the money, nor could anyone have forced Schwersenska to account for what she did with any withdrawn money.

¶13 The jury returned a guilty verdict on both the theft and bail-jumping charges, and found that Schwersenska embezzled more than $10,000 from the joint account.

¶14 Schwersenska filed a post-conviction motion requesting that the circuit court vacate the judgment of conviction and enter an order of acquittal, or in the alternative order a new trial. The motion alleged that Schwersenska's counsel provided her with ineffective assistance of counsel in multiple respects. Limited to the issues that she now renews on appeal, she alleged that it was deficient for trial counsel to fail to: (1) offer as evidence at trial the signature card for the joint account, (2) move for dismissal after the presentation of all evidence based on Schwersenska's joint ownership of the account, and (3) request that the court give to the jury a special jury instruction based on WIS. STAT. § 705.03(1) and *Russ*.

¶15 The circuit court held a *Machner* hearing, at which Schwersenska's trial counsel was the sole witness. *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979). We provide details about the *Machner* hearing testimony of Schwersenska's trial counsel below.

¶16 After receiving written submissions and additional oral argument regarding Schwersenska's post-conviction motion, the circuit court denied the motion. Schwersenska appeals.

**DISCUSSION**

¶17     Our supreme court has summarized the pertinent standards to address an ineffective assistance of counsel claim as follows:

> Whether a defendant was denied effective assistance of counsel is a mixed question of law and fact. The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review de novo. To demonstrate that counsel's assistance was ineffective, the defendant must establish that counsel's performance was deficient and that the deficient performance was prejudicial. If the defendant fails to satisfy either prong, we need not consider the other.
>
> Whether trial counsel performed deficiently is a question of law we review de novo. To establish that counsel's performance was deficient, the defendant must show that it fell below "an objective standard of reasonableness." In general, there is a strong presumption that trial counsel's conduct "falls within the wide range of reasonable professional assistance." Additionally, "[c]ounsel's decisions in choosing a trial strategy are to be given great deference."
>
> Whether any deficient performance was prejudicial is also a question of law we review de novo. To establish that deficient performance was prejudicial, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*State v. Breitzman*, 2017 WI 100, ¶¶37-39, 378 Wis. 2d 431, 904 N.W.2d 93 (citations omitted).

¶18     Each of the three deficiencies alleged by Schwersenska involves what she contends is an affirmative defense—based on WIS. STAT. § 705.03(1) and *Russ*—that she argues is available to the owner of a joint account who is charged

8

under WIS. STAT. § 943.20(1)(b) with embezzlement from the joint account. Before addressing this purported affirmative defense in more detail, and explaining how it relates to each of the alleged errors of trial counsel, we describe the statutory and case law underlying Schwersenska's affirmative defense theory. This involves the "different intent" exception to the general rule that each joint account holder is entitled to withdraw all or any part of a joint account, a general rule that favors the defense theory here.

¶19    We address WIS. STAT. § 705.03 and *Russ* in some detail in order to explain why we reject various arguments made by Schwersenska. Section 705.03 is part of WIS. STAT. ch. 705's governance of "Multi-Party and Agency Accounts." It establishes default rules governing the ownership of certain types of accounts, "[u]nless there is clear and convincing evidence of a different intent." Pertinent here, § 705.03(1) establishes that

> [a] joint account belongs, during the lifetime of all parties, to the parties without regard to the proportion of their respective contributions to the sums on deposit and without regard to the number of signatures required for payment. The application of any sum withdrawn from a joint account by a party thereto shall not be subject to inquiry by any person, including any other party to the account and notwithstanding such other party's minority or other disability, ….

Thus, without clear and convincing evidence of a different intent, § 705.03(1) "bars anyone … from looking into or questioning a party's application of sums withdrawn from the account during the lifetime of the joint parties." *See Wachniak v. Frank*, 140 Wis. 2d 429, 432, 410 N.W.2d 621 (Ct. App. 1987); *see also Lloyd v. Lloyd*, 170 Wis. 2d 240, 269, 487 N.W.2d 647 (Ct. App. 1992) (noting that if the doctrine of "severance and tracing" were applied to funds in joint accounts, this would

9

"defeat[] the intent of the parties in establishing a joint account in the first instance").

¶20 *Russ* addresses the operation of WIS. STAT. § 705.03(1) in a specific context, namely, the creation of a power of attorney that makes one joint account holder the agent of another joint account holder, when the joint account was created before execution of the power of attorney. In *Russ*, a mother and son created a joint account. *Russ*, 302 Wis. 2d 264, ¶¶1-3. They then established a power of attorney that allowed the son to act as the fiduciary of the mother. *Id.* The mother-principal brought a civil complaint against the son-agent for alleged breach of his fiduciary duty as the mother's agent under a power of attorney. *Id.*, ¶1. She alleged that he had improperly withdrawn and used funds from the joint bank account for his exclusive benefit. *Id.*, ¶¶4-7. The son-agent argued that neither the existence of the power of attorney nor any other evidence provided "clear and convincing evidence" of a "different intent" satisfying the exception to the general right-to-all rule of WIS. STAT. § 705.03. *Id.*, ¶23.

¶21 Our supreme court agreed with the son-agent. The court explained that, when a power of attorney agent and a principal share a joint checking account that existed before the creation of the power of attorney, execution of the power of attorney "in and of itself, is not 'clear and convincing evidence of a different intent' under WIS. STAT. § 705.03." *Russ*, 302 Wis. 2d 264, ¶31. The court noted that the power of attorney in that case was "silent as to whether [the principal] intended to change the way income flowed into or out of the joint account after" execution of the power of attorney. *Id.*, ¶30.

¶22     The court went on to observe that, when joint account holders create a power of attorney making one of them principal and one of them agent, this creates conflicting presumptions.  As the court explained:

> a joint checking account established under WIS. STAT. § 705.03 prior to the execution of a [power of attorney] creates a presumption of donative intent,[5] [but] the transfer of funds from such joint account by an agent acting under a [power of attorney] … for the agent's own use, creates a presumption of fraud, unless the [power of attorney] explicitly authorizes self-dealing.

*Id.*, ¶3; *see also id.*, ¶31-32.  The court proceeded to explain that neither presumption automatically trumps the other; the actual intent of the parties must be determined based on the facts of the case.  That is, under these circumstances, the circuit court is "free to make a determination" as to how to resolve the conflicting presumptions—that is, determine whether the "different intent" exception in § 705.03 was intended—"based upon the facts and the credibility of the witnesses." *Id.*, ¶36.

¶23     The supreme court noted that, on the facts in *Russ*, many of the circuit court's findings of fact supported the conclusion that the parties had not intended that the son-agent's fiduciary responsibilities would limit his ability to use the funds in the joint account as he wished.  *Id.*, ¶¶38-39.  This included a finding that the principal-mother "and everyone concerned understood that [son-agent] was taking

---

⁵ "Donative intent" means the intent to give some or all of an ownership interest in property to another.  *See Intent*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "donative intent" as "[t]he intent to surrender dominion and control over the gift that is being made").  As far as it goes, the fact that this intent can include the intent to convert individually owned property into a joint tenancy between the giver and recipient provides some basis for Schwersenska's argument. *See Trattles v. Trattles*, 126 Wis. 2d 219, 223, 376 N.W.2d 379 (Ct. App. 1985) (a gift may result from the conversion of separate property to joint tenancy); *Russ v. Russ*, 2007 WI 83, ¶31, 302 Wis. 2d 264, 734 N.W.2d 874 (citing *Derr v. Derr*, 2005 WI App 63, ¶36, 280 Wis. 2d 681, 696 N.W.2d 170 ("When funds are deposited into a joint bank account, donative intent is presumed.")).

care of [mother-principal] because she was his mother and [the son-agent] could do what he pleased with her money." *Id.*, ¶38.

¶24 Consistent with a plain language interpretation of WIS. STAT. § 705.03's introductory text and § 705.03(1), *Russ* confirms that funds held in a joint account may be jointly owned by all account holders or instead may be owned individually by the depositor and accessible by other owners subject to certain limitations. *See Russ*, 302 Wis. 2d 264, ¶61 (Abrahamson, C.J., concurring) ("Joint accounts can serve many purposes and take several forms" including accounts when "both persons access the account for whatever purposes they wish," or in contrast "accounts of convenience" when "the funds belong to the depositor of the funds and the other person accesses the account for the benefit of the owner of the funds, such as to pay the owner's bills"). And, *Russ* teaches that the existence of a power of attorney relationship between the account owners is significant, but not necessarily dispositive. *See id.*, ¶30.

¶25 With those understandings of *Russ*, we turn to Schwersenska's argument. She contends that *Russ* interprets WIS. STAT. § 705.03(1) to establish the following defense as applicable here. As a joint account owner, Schwersenska could not embezzle money from the joint account, because she benefited from the general ownership-right-to-all rule that she shared with H.R. joint ownership of *all* of the money in the account, regardless who deposited which dollars or for what purpose. As part of this defense, she notes that, under *Russ*, the potential existence of a valid power of attorney appointing Schwersenska is not necessarily dispositive on the issue of whether the parties intended to avoid applying the general ownership-right-to-all rule to their joint account. And, Schwersenska further argues that, if in this case one puts the power of attorney to the side, there was insufficient evidence

12

to prove that the joint owners expressed a different intent to avoid the ownership-right-to-all rule.

¶26    As best we understand Schwersenska's ineffective assistance argument based on WIS. STAT. § 705.03(1) and *Russ*, she contends that each of the three alleged deficiencies of counsel related to this affirmative defense in the following manner.  The first deficiency was that trial counsel's failure to offer the signature card, which  deprived the defense of evidence needed to support a viable theory that Schwersenska was an owner of all the funds in the joint account under § 705.03(1) and *Russ*.  Once raised, this ownership-right-to-all defense would have required the State to prove beyond a reasonable doubt that the parties did not intend Schwersenska to have joint ownership of all funds deposited into the joint account.  *See Moes v. State*, 91 Wis. 2d 756, 768, 284 N.W.2d 66 (1979) (imposing burden on prosecution, "as a matter of Wisconsin law," "to disprove beyond reasonable doubt the statutory defense of coercion").  Based on this defense, counsel's second and third alleged deficiencies were failing to move to dismiss the case at the close of all evidence, based on what Schwersenska submits was the State's inability to meet this burden, and failing to request a special jury instruction based on the ownership-right-to-all theory.

¶27    We assume without deciding that the civil law discussed in *Russ*, including WIS. STAT. § 705.03(1), can have some bearing on the legal standards in an embezzlement prosecution, and now address these alleged errors in turn.[6]

---

[6] The State argues that Schwersenska's trial counsel could not have been deficient for failing to bring an affirmative defense based on *Russ*, because such a defense would have been based on unsettled law and because Schwersenska does not fully explain how certain aspects of *Russ* would have applied under the circumstances here.  We decline to reject Schwersenska's arguments on that basis.  *Russ* is good law that predates this prosecution, and its lessons regarding

*Failure To Introduce Signature Card*

¶28     Schwersenska argues that her trial counsel was deficient in failing to introduce into evidence the signature card in order to support a motion to dismiss at the close of all evidence, based on the ownership-right-to-all theory.[7]  The card was signed by H.R. and Schwersenska as account owners and identified the account as "jointly owned by the parties named herein."  In response, the State argues that failure to offer the card could not have been deficient performance because the card would merely have been cumulative of other evidence provided to the jury.  The State bases its cumulative argument on the following.

¶29     At trial, Schwersenska's trial counsel had the following exchange with a bank manager for the branch in which Schwersenska and H.R.'s account was held:

---

the ownership and use of joint accounts have potential implications for a prosecution of theft under WIS. STAT. § 943.20(1)(b).  *See* ***State v. Bryzek***, 2016 WI App 48, ¶¶12-15, 370 Wis. 2d 237, 882 N.W.2d 483 (citing civil law, including ***Russ***, in concluding that modified jury instructions for charge under § 943.20(1)(b) did not accurately reflect case law standards for the ability of a power of attorney document to authorize self-dealing).

We note that our approach differs from an unpublished case of this court, ***State v. Kawalec***, No. 2017AP798, unpublished slip op. (WI App July 24, 2019), which also rejects an ineffective assistance of counsel claim predicated on the failure of trial counsel to pursue a defense to a charge under WIS. STAT. § 943.20(1)(b) based on ***Russ*** and WIS. STAT. § 705.03.  Neither party addresses ***Kawalec*** as potential persuasive authority, and it was released after the filing of the reply brief in this case.  We do not comment on the possibility, raised but not relied on in ***Kawalec***, that unfettered joint ownership of funds in a bank account is not a defense to a charge of embezzlement under various provisions of § 943.20.  *See* ***Kawalec***, No. 2017AP798, ¶¶7-10.

[7]  "[T]he defendant may move on the record for a dismissal" "at the conclusion of the entire case."  WIS. STAT. § 972.10(4).  The circuit court is to deny the motion if, looking at all of the evidence presented at trial in a light most favorable to conviction, "'the evidence adduced, believed and rationally considered, is sufficient to prove the defendant's guilt beyond a reasonable doubt.'"  *See* ***State v. Scott***, 2000 WI App 51, ¶12, 234 Wis. 2d 129, 608 N.W.2d 753 (quoting ***State v. Duda***, 60 Wis. 2d 431, 439, 210 N.W.2d 763 (1973)).

Q. Is a joint account a bank account in which two or more people have ownership rights over the same account?

A. Yes.

Q. And is it true that in a joint account, those rights include the right for all account holders to deposit, withdraw, or deal with the funds in the account regardless of who puts the money in the account?

A. Yes.

The manager further testified that, in general, when two people jointly create and own an account, and one later becomes the power of attorney for the other, some of the funds deposited and withdrawn from the account "might not necessarily involve the power of attorney at all." And, the branch manager testified that H.R. and Schwersenska's account was a joint account, consistent with the testimony of other witnesses as noted above.

¶30 Schwersenska's briefing acknowledges the content of the branch manager's testimony. However, her only response to the State's cumulative argument is to contend that, without introducing the card, her trial counsel "would have had little evidentiary support for a motion to dismiss" at the close of all evidence. This essentially concedes the point that the signature card was cumulative of other evidence presented at trial and fails to meaningful develop an argument that it was nonetheless objectively unreasonable for counsel to omit introducing the card as evidence.[8] *See* ***State v. Chu***, 2002 WI App 98, ¶53, 253 Wis. 2d 666, 643 N.W.2d

---

[8] Schwersenska makes a reference to the timing of the opening of the joint account reflected on the signature card, but then implicitly concedes that she has no argument to make along these lines. Schwersenska notes that H.R. testified that the joint account was opened when she was a child, and contrasts this with the fact that the signature card shows that the account was opened in February 2007, when B.H. was 29. Schwersenska argues that introducing the signature card "would have been helpful for the jury" in clarifying the timing of the account's creation. However, as the State notes, Schwersenska fails to articulate how this clarification would have assisted in her defense, and thus fails to develop an argument relating to prejudice. Schwersenska does not respond to the State's argument, implicitly conceding it.

878 (deeming conceded as true arguments raised in respondent's brief that are not addressed in reply brief). Moreover, as we explain next, we conclude that such a motion to dismiss would have been denied if brought, even if the signature card had been introduced.

*Failure To Move For Dismissal After The Presentation Of The Evidence*

¶31 Schwersenska argues that her trial counsel was deficient for failing to move to dismiss the case after the presentation of all of the evidence based on the ownership-right-to-all theory. Specifically, we understand Schwersenska to contend that such a motion should have been made based on the argument that the State had not proven beyond a reasonable doubt that the two joint account owners had the "different intent" that H.R. retain individual ownership of funds from her sources of income that were deposited into the account. We agree with the State that, under the pertinent standards, such a motion would have been denied. Accordingly, the decision of Schwersenska's trial counsel to not bring the motion did not prejudice her. *See **State v. Allen***, 2017 WI 7, ¶46, 373 Wis. 2d 98, 890 N.W.2d 245 (defendant "could not have been prejudiced as a result of" failure to bring "meritless" objection); *See **Breitzman***, 378 Wis. 2d 431, ¶37 ("If the defendant fails to satisfy either prong, we need not consider the other.").

¶32 The jury was presented with evidence that could have allowed it to conclude beyond a reasonable doubt that Schwersenska and H.R. intended that the money deposited into the account from H.R.'s sources of income not be converted into a joint tenancy between them. In other words, the jury had a reasonable basis to find that the parties intended for H.R. to retain individual ownership of any money in the account that H.R. obtained individually, such as the settlement proceeds.

¶33     We have already referenced some evidence relevant to this potential finding, namely, H.R.'s repeated references in her testimony to money in the account as "my money," and her testimony that Schwersenska made withdrawals of that money from the account without H.R.'s permission. In addition, H.R. specifically testified that, when she received the settlement proceeds of approximately $30,000 in October 2010, she promptly agreed to give $6,000 to Schwersenska as compensation for helping her with the lawsuit. It is uncontested that the records reflect that the entire $30,000 was deposited into the account, and that Schwersenska made a $6,000 withdrawal a few days later. The jury could have reasonably inferred from this activity that the parties understood that Schwersenska's act of depositing the settlement money into the joint account alone did not give Schwersenska a joint ownership interest in the entire sum. All of this evidence was sufficient to support a reasonable inference that H.R. and Schwersenska shared the understanding that H.R. retained individual ownership of her income that was deposited into the account, including the bulk of the settlement proceeds.[9]

---

[9] In the alternative, we conclude that the evidence adduced at trial could also reasonably support a jury determination that the arrangement between H.R. and Schwersenska fit the description of what Wisconsin well-established case law refers to as an "account of convenience."

Under this doctrine, if the way that multiple account owners use an account demonstrates that it is an account of convenience, this can rebut legal presumptions regarding joint accounts now codified in WIS. STAT. ch. 705. *See, e.g.*, ***Michaels v. Kruke***, 26 Wis. 2d 382, 392-93, 132 N.W.2d 557 (1965) (creation of a joint account may be "'for the convenience of the depositor'" giving "'the nondepositor'" "'the power to withdraw for the benefit of the depositing owner but no rights of survivorship are intended'" (quoted source omitted)); ***Bell v. Neugart***, 2002 WI App 180, ¶¶10-11 & n.11 256 Wis. 2d 969, 650 N.W.2d 52 (right of survivorship presumed for joint accounts under WIS. STAT. § 705.04(1) rebutted when evidence establishes that joint account was "for convenience only" and not a "true joint account[]").

Relevant additional evidence included H.R.'s testimony to the following regarding the October 2010 – July 2012 time period. When H.R. broached with Schwersenska the possibility of removing Schwersenska from the joint account, Schwersenska responded that she feared that H.R.

¶34    Schwersenska asserts that the State did not present sufficient evidence to meet the clear and convincing standard that there was a "different intent" as described in WIS. STAT. § 705.03, much less the beyond-a-reasonable-doubt standard that would arguably apply to an affirmative defense based on § 705.03 and *Russ*. However, in making this assertion, Schwersenska mainly points to evidence that would allow the jury to find that she and H.R. intended to follow the general ownership-rights-to-all rule for joint accounts in § 705.03(1), without addressing the evidence we have summarized that would support the contrary finding. *See State v. Poellinger*, 153 Wis. 2d 493, 504, 451 N.W.2d 752 (1990) (credibility of witnesses is for the trier of fact).

¶35    Schwersenska also focuses on possible defects in the power of attorney, with the goal of undermining the State's reliance on it (albeit it, as we have explained, only partial reliance). It is uncontested that the power of attorney was signed by H.R. and notarized in 2008, which was after the creation of the joint account owned by H.R. and Schwersenska. In an apparent set of oddities, however, the top of the document bears H.R.'s name as purporting to identify both Schwersenska and Schwersenska's husband as H.R.'s power of attorney agents, while at the bottom it names "Phyllis Schwersenska *of Thomas Schwersenska*" as

---

would waste all of H.R.'s money. Schwersenska handled many if not all withdrawals, including withdrawals for the benefit of H.R., and Schwersenska tracked the account's balance using the account record book that Schwersenska kept. Any of this evidence, if credited by the jury, provided a basis to conclude that Schwersenska and H.R. understood the joint account to be an account of convenience, to help H.R. avoid mismanaging her money. Under this arrangement, "the funds belong to the depositor of the funds and the other person accesses the account for the benefit of the owner of the funds, such as to pay the owner's bills." *See Russ*, 302 Wis. 2d 264, ¶61 (Abrahamson, C.J., concurring).

Schwersenska makes several counterarguments to the effect that neither the State nor the defense based their strategies on the applicability of accounts of convenience. While we question various aspects of these arguments, it is sufficient to note that they fail to come to grips with the pertinent standards regarding the motion to dismiss and the evidence summarized above.

successor agents. This, even though the "*of* _____" is plainly intended for designation of the agent's place *of residence*. Also confusing, H.R. signed the document as both agent and principal.

¶36 In any case, however, neither party makes a developed, supported argument as to whether the power of attorney served to validly appoint Schwersenska as H.R.'s agent. *See* WIS. STAT. § 244.06(2) ("A power of attorney executed in this state before September 1, 2010, is valid if its execution complied with the law of this state as it existed at the time of execution."); WIS. STAT. § 243.10(2) (2007-08) ("A Wisconsin basic power of attorney for finances and property is legally sufficient under this section if … the form is properly completed"). And, more fundamentally, Schwersenska seems to misread **Russ** to say that, if a power of attorney in this context is invalid, that means that a "different intent" under WIS. STAT. § 705.03 *cannot* be established based on other evidence. But as our discussion of **Russ** above demonstrates, nothing in that case suggests that even an invalid power of attorney cannot be part of the evidentiary picture, providing potential evidence of a different intent.

¶37 In sum, Schwersenska fails to establish that the motion to dismiss which she now argues her trial counsel should have brought would not have been denied, and therefore fails to show that she was prejudiced by that omission.

*Failure To Request Special Jury Instructions*

¶38 Schwersenska argues that her trial counsel erred in failing to request a special jury instruction based on language in WIS. STAT. § 705.03(1) and **Russ**. Specifically, Schwersenska contends that the following non-pattern jury instruction should have been given, consistent with what she contends should have been the affirmative defense theory presented by her counsel:

Under Wisconsin law, a joint account belongs, during the lifetime of all parties, to the parties without regard to the proportion of their respective contributions to the sums on deposit and without regard to the number of signatures required for payment. When a Power Of Attorney agent and a principal share a preexisting joint account, the execution of a Power Of Attorney document, in and of itself, is not proof beyond a reasonable doubt of a different intent as to ownership of the joint account and ownership of the sums on deposit without regard to the proportion of their respective contributions.

We agree with the State that this proposed special instruction would not have fully informed the jury of the pertinent law, and therefore failure to request the instruction could not have been deficient performance. More generally, we conclude that Schwersenska fails to show that counsel's decision not to pursue a strategy that relied on *Russ* was objectively unreasonable.

¶39 Appellate courts "'review jury instructions as a whole to determine whether the overall meaning communicated by the instructions was a correct statement of the law.'" *State v. Langlois*, 2018 WI 73, ¶38, 382 Wis. 414, 913 N.W.2d 812 (quoted source omitted). Whether a requested special instruction fully and accurately states the law is a question of law we review de novo, in this case within the ineffective assistance framework. *See State v. Bryzek*, 2016 WI App 48, ¶8, 370 Wis. 2d 237, 882 N.W.2d 483.

¶40 The jury instruction that Schwersenska argues trial counsel should have proposed would not have been given by the circuit court because it does not accurately describe the pertinent law. The first sentence is based on the default ownership-right-to-all rule of WIS. STAT. § 705.03(1). But it fails to account for the possibility, evident in § 705.03's introductory text, that the parties may form a "different intent." When read in isolation, the first sentence suggests that there is no exception. Confusingly, the second sentence then contradicts this suggestion. It

alludes to the possibility of the existence of a "different intent," but only in the roundabout way of noting the following proposition derived from *Russ*: a power of attorney linking account owners, executed after a joint account's creation, does not necessarily prove a different intent existed. Continuing with our assumption that Schwersenska is correct that *Russ* and § 705.03 apply in the criminal embezzlement context, in order to fully and accurately inform the jury, the instruction would contain language directing the jury to consider whether the State had proven, beyond a reasonable doubt, that Schwersenska and H.R. had formed a different intent when viewing *all* of the evidence, not merely considering the execution (or the attempt to execute) the power of attorney.

¶41 Further, as the State notes, Schwersenska's proposed instruction also fails to fully and accurately reflect the pertinent law because it omits reference to the presumption of fraud discussed in *Russ*. To repeat, one conflicting presumption explained in *Russ* is the presumption of fraud that arises when a power of attorney agent "transfers funds deposited by the principal" "for the agent's own use," "without written authority" in the power of attorney. *See Russ*, 302 Wis. 2d 264, ¶32. Assuming without deciding that the power of attorney here validly appointed Schwersenska as fiduciary agent, there is no dispute that it did not authorize self-dealing as discussed in *Russ*. Moreover, there was evidence, which the jury was free to credit, that Schwersenska withdrew money from the joint account that was deposited from H.R.'s sources of income, which Schwersenska spent for her sole

benefit.[10] *But see **Bryzek***, 370 Wis. 2d 237, ¶¶4, 10-15 (discussing enactment of WIS. STAT. § 244.14(1), which appears to limit the ability of parties executing a power of attorney to authorize self-dealing, as highlighted in ***Russ***).

¶42 Schwersenska does not squarely address the State's argument on the presumption of fraud point, nor indeed any of the State's arguments regarding the jury instruction issue. She may mean to argue that the State's beyond-a-reasonable-doubt burden to prove every element of the offense and to disprove a properly raised affirmative defense would apply to an attempt by the State to establish the presumption of fraud, because such a presumption would implicate elements of the charged crime of embezzlement and conflict with Schwersenska's proposed defense theory. *See **Sandstrom v. Montana***, 442 U.S. 510 (1979); ***Moes***, 91 Wis. 2d at 768; *see also* WIS. STAT. § 903.03(2) ("When the presumed fact establishes guilt or is an element of the offense or negatives a defense, the judge may submit the question of guilt or of the existence of the presumed fact to the jury, if, but only if, a reasonable juror on the evidence as a whole, including the evidence of the basic facts, could find guilt or the presumed fact beyond a reasonable doubt."); WIS JI—CRIMINAL

---

[10] Such evidence includes the following. H.R. testified that, when she began monitoring the joint account online, she noticed withdrawals that she had not known about or given permission for, and that she did not lend or give large sums of money to family members other than the $6,000 she gave to Schwersenska, as noted above. Among the transactions that H.R. viewed as unauthorized was a total of $2,500 withdrawn by Schwersenska on November 23 and 24, 2010 (shortly before the Black Friday shopping day). The investigating officer highlighted 21 transactions in which withdrawal slips indicated that Schwersenska was responsible and the withdrawn funds were not used for H.R.'s benefit.

Further, it was uncontested at trial that Schwersenska sometimes gambled at a casino during the pertinent time period, which permitted the reasonable inference that she gambled with at least some of the money she withdrew from the joint account. An employee for the casino testified that records of Schwersenska's gambling activity reflected that from October 2010 through July 2012, Schwersenska lost a net of approximately $800 dollars, and had net losses for each of the calendar years 2010, 2011, and 2012. These records also showed that Schwersenska gambled at the casino at least once per month for each month, October 2010-December 2012, including up to three times a week in the "first half of" 2011.

1444 ("The defendant intentionally used the money without the owner's consent and contrary to the defendant's authority"). However, assuming that Schwersenska intends to make this argument, she fails to explain how the proposed jury instruction would have fully and accurately informed the jury of pertinent law in WIS. STAT. § 705.03 and *Russ*, when the proposed instruction that she now offers does not even mention the presumption of fraudulent intent.

¶43 Whether or not one could write an instruction to fit these circumstances that would solve the flaws that we have noted in Schwersenska's proposed instruction, it is not our role to take up the task. We cannot assume the role of Schwersenska's attorney.

¶44 Further, even if we had been presented with an improved version, Schwersenska does not meet her burden to show that her trial counsel's decision not to request any such instruction was objectively unreasonable. At the *Machner* hearing, Schwersenska's trial counsel testified that, although he had not considered requesting such an instruction at the time of trial, he did not know that he would have or if the court would have granted the request. However, counsel further explained that, based on his reading of *Russ* before trial, he did not believe that the instruction that Schwersenska now proposes fully captures the holding of that case. Neither party followed up on why counsel held this belief. Thus we cannot say that counsel lacked a reasonable basis for not pursuing an instruction based on *Russ*.

¶45 In sum, we conclude that Schwersenska does not meet the deficient performance prong of her ineffective assistance claim as it pertains to alleged error of failing to request the proposed jury instruction.

¶46 Finally, we address one additional ineffective assistance argument that Schwersenska briefly makes, separate from the three alleged deficiencies

23

addressed above. She argues that counsel should have understood that the defense strategy that he chose to follow was "doomed" by a pretrial ruling of the court. This is a reference to trial counsel's strategy of demonstrating that Schwersenska was an honest money manager who acted in the interests of H.R. Schwersenska's argument now is that counsel's trial strategy was rendered unreasonable before trial as a result of pretrial order that prevented trial counsel from introducing evidence that Schwersenska had allegedly performed a similar role for other family members without complaints that she had embezzled from any of them. One problem with this argument is that it fails to recognize that the honest-money-manager evidence was only one facet of the defense that counsel pursued at trial. Schwersenska does not account for other aspects of her counsel's trial strategy, such as his decision to highlight alleged defects in the power of attorney and the State's inability to provide a concrete total for the amount of money Schwersenska allegedly embezzled from the joint account. Further, "counsel's performance need not be perfect, nor even very good, to be constitutionally adequate." *See State v. Carter*, 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695. Thus, even if we had doubts about the persuasiveness or execution of a strategy based on Schwersenska being honest in dealing with family members other than H.R., we are not persuaded that it was objectively unreasonable to pursue such a strategy when assessing counsel's performance as a whole.

## CONCLUSION

¶47     For these reasons, we affirm the judgment of conviction and order denying post-conviction relief.

24

*By the Court.*—Judgment and order affirmed.

Not recommended for publication in the official reports.